R. B. Spivy v. D. W. March et al.

No. 2266.  Decided December 18, 1912.

**1.—Married Woman—Separate Examination and Acknowledgment.**

The absence from the certificate of privy examination and acknowledgment of a deed by a married woman of her declaration that she did not wish to retract it is not fatal to the validity of the conveyance if such fact reasonably appears from the language employed by her as shown by the certificate. (Pp. 477, 478.)

**2.—Same.**

A certificate of acknowledgment of a deed by a married woman showed that after acknowledging with her husband the execution of the deed, she was privily examined "and after having the deed explained to her, says that she signed the same of her own free will and accord without fear or restraint on the part of her said husband." Such statement showed that she was then satisfied to make the deed and was equivalent to a declaration that she did not wish to retract it. Especially, it seems, should this rule be applied where she made no subsequent effort to repudiate her act, and the objection to the sufficiency of the deed is urged by a stranger to the title. (Pp. 476-479.)

Error to the Court of Civil Appeals, Sixth District, in an appeal from Rusk County.

Spivy sued March and others for the recovery of land and had judgment, which was reversed and rendered in favor of defendants on their appeal. Spivy then obtained writ of error.

*J. H. Turner, N. B. Morris,* and *H. I. Myers,* for plaintiff in error. —If it be true that the statutory acknowledgment of a married woman in conveying her separate property is necessary to take the title out of her, yet the exact words of the statute are not required. The acknowledgment will be sufficient if it substantially complies with the statute, and the certificate of acknowledgment complained of shows substantial compliance therewith.  Norton v. Davis, 83 Texas, 32; Belcher v. Weaver, 46 Texas, 293.

*John R. Arnold,* for defendants in error.—The essence of a married woman's conveyance is the statutory acknowledgment of which the officer's certificate is the evidence.  Rev. Stats., arts. 635, 4621; Johnson v. Taylor, 60 Texas, 364; Davis v. Agnew, 67 Texas, 210; Berry v. Donley, 26 Texas, 745.

A defectively certified deed of a married woman will not pass a legal or an equitable title by estoppel.  Silcock v. Baker, 61 S. W., 940; Johnson v. Bryan, 62 Texas, 625; Owen v. N. Y. & T. Land Co., 11 Texas Civ. App., 287.

If the makers of the deed to Few would not be estopped by reason of essential defects in the certificate of the wife's privy acknowledgment, then plaintiff can claim no right through such deed.  Berry v. Donley, 26 Texas, 745.

To entitle plaintiff to recover against even naked possessors, he must show that he is the absolute owner of the land, not only against

such defendants, but against all persons. Hooper v. Hall, 35 Texas, 83-4; Phillipowski v. Spencer, 63 Texas, 608-9.

Under general denial and not guilty, defendants could make any lawful defense. Rev. Stats., art. 5257; Kaufman v. Brown, 83 Texas, 41; Watson v. Hewitt, 45 Texas, 472.

An outstanding title is a complete defense. Adams v. House, 61 Texas, 641; La Pice v. Cadenhead, 21 Texas Civ. App., 364.

MR. CHIEF JUSTICE BROWN delivered the opinion of the court.

The case was submitted to the judge of the District Court, without a jury, who filed this statement of facts and entered judgment accordingly:

"This is a suit in trespass to try title by plaintiff against defendants for a tract of 209 acres of land, a part of the Jose Durst survey, situated in Rusk County, Texas.

"I find the land was duly conveyed from the State to Jose Durst and from Durst to Alexander Jordan. Prior to 1857 the land was partitioned between the heirs of Alexander Jordan, south half being given to the children and heirs and the north half to the widow, who had married Jack Anderson.

"In this partition the south half was blocked up and given to the children in severalty, the 209 acres in suit, together with 160 acres more adjoining the 209 acres on the east, making 369 at that time in one body, were allotted to Emma Jane Hensley, who was the child and heir of Alexander Jordan, and who had married Sam Hensley. Emma Jane Hensley and her husband lived on this land, the home place being on the 209 acres of land.

"In 1857 Emma Jane Hensley and her husband sold the 209 acres in suit to C. A. Few and were paid for same in stock and property by Few. C. A. Few soon after took possession of the land by tenant. I find the land was the separate property of Emma J. Hensley, and that the certificate of acknowledgment to her deed is defective, but that she received the consideration for the land acquired in the sale, delivered possession of the land to Few, and the defendants show no right, legal or equitable, through her. In 1866 C. A. Few deeded the land to R. B. Tutt. W. W. Morris acquired the land at execution sale in part and by deed from Hollingsworth for balance, who also acquired part of same from Tutt's estate by execution sale.

"In 1885 W. W. Morris estate was partitioned and this 209 acres of land was set apart to Reed B. Spivey, a legatee under the will of W. W. Morris.

"I find that W. W. Morris paid taxes on this 209 acres of land from the date of his deed until death, and Reed Spivey since and claimed this 209 acres of land.

"I find that March paid no taxes on this 209 acres of land as such. I find this S. W. March, deceased, claimed and claims now 160 acres of the Hensley 369 acres, not claimed by the plaintiff and not in this suit, and that Hensley and March were talking about the sale of this 160 acres of land at the time testified by McCrary.

"I find that in 1877 or 1878 the court house in Rusk County was burned and many of the records were destroyed by fire and that the

recitals in the sheriff's deed and the evidence is sufficient to establish their existence of execution and orders of sales returned.

"I find that defendants show no conveyance to the land or any part of same except a deed from Nancy Anderson, who was Nancy Jordan in 1868, including a strip about 40 feet wide on the north end of the 209 acres tract, and this deed could convey no title because the land had been set apart to Jane Hensley and Nancy Jordan or Anderson was a party to the Divestor long before and March had notice.

### "Conclusion of Law.

"I, therefore, conclude that, while the plaintiff's title is irregular and in some respects defective, defendants have shown no title, legal or equitable, and as against defendants the plaintiff is entitled to recover, and it is so ordered.

"W. C. BUFORD, Judge,
"Fourth Judicial District of Texas."

The defendants took all necessary steps to perfect an appeal to the Court of Civil Appeals of the Sixth District, and assigned these errors:

"(1) The trial court erred in admitting over the objections of the defendants and considering as evidence the record of a deed from Emily Jane Hensley and husband, Samuel Hensley, to C. A. Few, because said deed was void on account of the lack of a legal certificate of acknowledgment of the execution of said deed by said Emily Jane Hensley, wife of Samuel Hensley.

"(2) The trial court erred in holding that plaintiff acquired a recoverable title through the deed from Emily Jane Hensley and husband to C. A. Few.

"(3) The court erred in admitting over the objection of defendants, and considering as evidence, the deed by James H. Everett, sheriff of Rusk County, to Hollingsworth and Morris.

"(4) The court erred in admitting and considering as evidence of a conveyance of the land in suit, the deed from S. P. Hollingsworth to W. W. Morris.

"(6) The court erred in holding that plaintiff acquired the title of John C. Tutt.

"(7) The court erred in permitting plaintiff, over the objections of defendants, to introduce as evidence that portion of the deposition of Mrs. Few stating that her husband, C. A. Few, put a man on it (the land in suit) to take care of it; because the same was shown by the deposition of that witness to be hearsay, she having testified in her deposition, 'I was never on the place, I never saw the land.'

"(8) The court erred in finding, 'Few soon after took possession of the land by tenant,' because this finding is based on hearsay testimony.

"(9) The trial court erred in finding, 'The north half (of the Durst league) was given to the widow who had married Jack Anderson,' because the judgment of the District Court gives the whole of the north half of that league to the heirs of John Jordan.

" (10) The trial court erred in finding that defendants show no conveyance to the land or any part of the same, except a deed from Nancy Anderson, who was Nancy Jordan in 1868.

" (11) The trial court erred in holding that defendants have shown no title, legal or equitable, for which reason as against defendants the plaintiff is entitled to recover."

The Honorable Court of Civil Appeals reversed the judgment of the District Court and rendered judgment for the defendants below. The case is now before this, court on writ of error.

The right of plaintiff in error depends upon the validity of the deed from Hensley and wife to C. A. Few, under whom the plaintiff claimed by regular chain of transfers. The land was the separate property of Emily J. Hensley. The deed to Few is in proper form, but it is objected that the certificate of acknowledgment to the deed was not and is not in legal form in omitting the words, "she wished not to retract it."

The defendant in error showed no title to the land from any source. By the facts he is shown to be a naked trespasser who seeks to avail himself of a technical error in the certificate of the officer who took Mrs. Hensley's acknowledgment of her execution of the deed made by her and her husband to C. A. Few.

At the time the certificate was made by the officer, this statute was in force:

"Art. 1003.   That when a husband and his wife have signed and sealed any deed or other writing purporting to be a conveyance of any estate or interest in any land, slave or slaves or other effects, the separate property of the wife, or of the homestead of the family, or other property exempted by law from execution, if the wife appear before any judge of the Supreme or District Court, or notary public, and, being privily examined by such officer, apart from her husband, shall declare that she did freely and willingly sign and seal the said writing, to be then shown and explained to her, and wishes not to retract it, and shall acknowledge the said deed or writing so again shown to her to be her act, thereupon such judge or notary shall certify such privy examination, acknowledgment, and declaration, under his hand and seal, by a certificate annexed to said writing to the following effect or substance, viz:

"State of Texas, County of ......... Before me, ...... ........., judge of, or notary public of ........ County, personally appeared ........ ..........., wife of ........ ........., parties to a certain deed or writing bearing date on the ... day of ...., and hereto annexed, and having been examined by me privily and apart from her husband, and having the same fully explained to her, she, the said ...... ........., acknowledged the same to be her act and deed, and declared that she had willingly signed, sealed, and delivered the same, and that she wished not to retract it; to certify which I hereto sign my name and affix my seal, this .... day of ......, A. D. .....

"But any certificate showing that the requisites of the law have been complied with shall be as valid as the form here prescribed;

and such deed or conveyance, so certified, shall pass all the right, title, and interest which the husband and wife, or either of them, may have in or to the property therein conveyed."

The last clause of the statute is sufficient authority for sustaining the certificate in this case, because it appears that Mrs. Hensley declared that with her husband she signed, sealed and delivered the deed to C. A. Few, and upon her privy examination, "she, after having the deed explained to her," declared that she signed it "of her own free will and accord, without fear or compulsion on the part of her husband." She had the opportunity to retract, but, instead of doing so, she affirmed that it was her free and uninfluenced action. In addition it is beyond dispute that Mrs. Hensley and her children lived near the land for many years and that neither she nor her heirs ever made claim to the land.

In Belcher v. Weaver, 46 Texas, 293, Chief Justice Roberts made a thorough analysis of that statute and said: "The general rule upon this subject is, that there must be a substantial, though not a literal, compliance with the terms of the statute, and that, although words not in the statute are used in the place of others that are, or words in the statute are omitted, yet, if the meaning of the words used is the same, or they represent the same fact, or, if the omission of a word or words is immaterial, or can be supplied by a reasonable and fair construction of the whole instrument, the certificate will be held sufficient." * * * "It follows, then, that any artificial distinctions being made for the purpose of showing that one of the nominal parts is not specifically embraced, or that one part is defectively stated, will not avail, if from the evident sense of the whole instrument a reasonable conclusion can be arrived at, that the requisites of the law have been complied with."

The rule of construction to be applied to such instruments as above copied is, that the courts will give a liberal construction to the language of such certificates and will sustain them if it reasonably appears from the language used that the married woman "did not wish to retract it."

In the case cited above the learned judge construed the word "contract" to mean "retract." Contract means to enter into, while retract means to withdraw from; and any but the most liberal interpretation of those words would have shown that the woman did not wish to make the conveyance. That the substance of the language of the statute will be sufficient when used in the privy acknowledgment of a married woman is sustained by the following cases: Belcher v. Weaver, 46 Texas, 293; Norton v. Davis, 83 Texas, 32; Masterson v. Harris, 37 Texas Civ. App., 145, 83 S. W., 428; Adams v. Pardue, 36 S. W., 1015. Many cases might be cited to the same effect, but we find no case in which it has been held that a certificate of this character, which omitted the words, "she wished not to retract it," was condemned, if from the language of the certificate it appears with reasonable certainty that the instrument was explained to the woman and that she then expressed herself to be satisfied with the transaction. Each certificate must be judged by its own terms, and we believe it to be the well settled and sound rule that any language

which shows that the statute has been substantially complied with must be sustained.

The words, "that she did not wish to retract it," are of no greater importance than others. Those words simply express her satisfaction with the transaction at that time, and if that state of mind should by other words be shown to have existed, the certificate would be valid. We here copy the certificate:

"State of Texas, )
County of Rusk. )

"Personally appeared before me, the undersigned Notary Public, Samuel Hensley, and Emily J. Hensley, his wife, both to me well known, who acknowledged that they signed, sealed and delivered the above and foregoing deed to C. A. Few (by making their marks). And the said Emily J. Hensley, wife of Samuel Hensley, being by me examined privily and apart from her husband and after having the deed explained to her, says that she signed the same by making her mark of her own free will and accord without fear or restraint on the part of her husband.

"Given under my hand and official seal this Sept. 8th, 1857.
"(Signed)    WILLIAM M. ROSS, Notary Public."

This certificate shows that the husband and wife together executed and acknowledged the deed, after which the wife was removed from the presence of the husband so that she would be entirely free from his influence; the officer took the precaution to explain the deed to Mrs. Hensley so that she could not be misled by anything said to her by her husband or other person as to the effect of the conveyance, and, thus informed and guarded by the officer, she declared "that she signed the same of her own free will and accord." Thus she declared that she was free from any compelling influence and without any "fear or restraint on the part of her husband." The law offered to her the opportunity to *retract,* but in strong language she in effect affirms the transaction. We will suppose that Mrs. Hensley had appeared before this court, and, knowing that she could retract, had in the language of the certificate expressed herself, would not this or any other court say that she was satisfied with the transaction? It is safe to construe the language of the certificate as if the court were performing the duties of the officer, and if Mrs. Hensley, with the same warning, should use the words of this certificate, would it not reasonably appear to such court that she was satisfied? Adding to this the fact that for the remainder of her life she recognized the deed as valid, can there be a reasonable doubt on this question?

It is not necessary for us to decide in this case whether a stranger to the title should ever be permitted to interpose this defense, but we are firmly convinced by authority and sound reasoning that, under such conditions, a court should construe the language as Mrs. Hensley and her heirs have construed it by their inaction for a half century. If a stranger to the title be permitted to make such objection, courts should cast upon him the burden of establishing the invalidity.

We have in this case by the decision of the Court of Civil Appeals

a stranger setting up a defect which the vendor refused to assert. The injustice and unreasonable character of the proposition forbids that this court should approve it, unless required to do so by precedents that we dare not disregard. We do not find the decisions of our courts to be of that character.

It is ordered that the judgment of the Court of Civil Appeals should be reversed, and that the judgment of the District Court be affirmed.

*Reversed and judgment of District Court affirmed.*