### J. D. FIELDS & CO. v. ALLISON.
(No. 5340.)

(Court of Civil Appeals of Texas. San Antonio. Nov. 4, 1914. Rehearing Denied Dec. 9, 1914.)

1. PLEADING (§ 293*)—VERIFICATION—PLEA IN ABATEMENT.

In trespass to try title by a partnership in which the petition alleged that the title to two of the three surveys involved was in one of the partners and that title to the other survey was in the other partner, it was not necessary that a plea in abatement for misjoinder of parties and causes of action should be sworn to, as the matters called to the court's attention were apparent from the pleadings.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 882–884; Dec. Dig. § 293.*]

2. ABATEMENT AND REVIVAL (§ 81*)—PLEAS IN ABATEMENT—TIME FOR FILING.

Rev. St. 1911, art. 1909, providing that pleas shall be filed in the due order of pleading and heard and determined in such order under the direction of the court, does not prescribe a cast-iron rule, and the court may, in its discretion, hear exceptions before trying a plea in abatement, and a party who under such circumstances submits exceptions before submitting a plea in abatement does not waive his plea.

[Ed. Note.—For other cases, see Abatement and Revival, Cent. Dig. §§ 10, 22, 175–177, 225, 499–504, 506; Dec. Dig. § 81.*]

3. APPEAL AND ERROR (§ 1039*)—HARMLESS ERROR—RULINGS ON PLEADINGS.

Where, in trespass to try title by a partnership composed of J. and W., it was alleged that J. held the legal title to two of the surveys involved and W. the title to the third and a plea in abatement for misjoinder of parties and causes was sustained, but J. was permitted to proceed as plaintiff for the recovery of the surveys to which he claimed title, the sustaining of the plea, if prejudicial at all, was prejudicial only to the partnership and W., and was harmless as to J. individually.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4075–4088; Dec. Dig. § 1039.*]

4. ADVERSE POSSESSION (§ 19*)—STATUTORY PROVISIONS—APPLICATION.

Under Rev. St. 1911, art. 5678, providing that possession of land belonging to another by a person owning or claiming 5,000 acres or more inclosed by a fence in connection therewith or adjoining thereto shall not be the peaceable and adverse possession contemplated by article 5675, requiring actions for the recovery of lands against one in peaceable and adverse possession to be brought within ten years, unless such land so belonging to another shall be segregated and separated by a substantial fence from such lands connected therewith or thereto adjoining, or unless one-tenth thereof shall be cultivated and used for agricultural purposes or used for manufacturing purposes, or unless there be actual possession thereof, the ten-year statute of limitations had no application to a dispute concerning the boundary of certain surveys embraced in a pasture containing over 5,000 acres upon which there were no improvements except a fence around it.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 99–105; Dec. Dig. § 19.*

For other definitions, see Words and Phrases, Second Series, Peaceable and Adverse Possession.]

5. ADVERSE POSSESSION (§ 68*)—BOUNDARIES—STATUTES OF LIMITATION.

The three and five year statutes of limitation had no application to a boundary dispute, where plaintiff only claimed the land paid for by him and claimed up to a fence only because he thought his deeds embraced the land up to the fence.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 387–393; Dec. Dig. § 68.*]

6. TRIAL (§ 350*)—VERDICT—SPECIAL ISSUES—LOCATION OF BOUNDARIES.

In trespass to try title involving a boundary dispute, the court, in addition to submitting an issue as to whether a certain fence was on the true boundary line, should have submitted an issue as to where the true boundary was, if not at the fence, as, the jury having found that the fence was not on the line, an officer executing a writ of restitution would have nothing to guide him.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 828–833; Dec. Dig. § 350.*]

7. TRIAL (§ 260*)—INSTRUCTION COVERED BY SPECIAL ISSUES SUBMITTED.

In trespass to try title, an instruction embraced in and covered by the special issues submitted was properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

8. TRIAL (§ 350*)—SPECIAL ISSUES—MATTERS NOT IN DISPUTE.

In trespass to try title involving a boundary dispute, where the question in issue was whether a fence was on the boundary line and there was no dispute as to the existence of such fence or how long it had been there, the court properly refused to submit issues as to these matters.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 828–833; Dec. Dig. § 350.*]

**9. TRESPASS TO TRY TITLE (§ 38*)—BURDEN OF PROOF—"PRIMA FACIE CASE."**

In trespass to try title involving a boundary dispute, in which it appeared that by reason of the size of plaintiff's inclosure and the lack of improvements he had not acquired title by limitation, though proof of a possessory title in plaintiff made a "prima facie case," which is such established facts as the law recognizes as sufficient to overcome the inertia of the court and to authorize affirmative action by the court in the absence of evidence on the other side, it did not change the burden of proof, and, evidence having been introduced in rebuttal, the burden was on plaintiff to prove a legal title.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 53; Dec. Dig. § 38.*

For other definitions, see Words and Phrases, First and Second Series, Prima Facie Case.

**10. COSTS (§ 32*)—TRESPASS TO TRY TITLE—BOUNDARY DISPUTE.**

Where, in trespass to try title to certain surveys which plaintiff alleged were separated from defendant's land by a fence, defendant admitted plaintiff's title to such surveys, but denied that the fence was on the boundary thereof, and the jury found that the fence was not on the true boundary, costs were properly taxed to plaintiff.

[Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 108–132; Dec. Dig. § 32.*]

Appeal from District Court, Sutton County; J. W. Timmins, Judge.

Action by J. D. Fields & Co. against George S. Allison, which after a plea in abatement had been sustained, proceeded in the name of J. D. Fields as plaintiff. From a judgment in his favor for insufficient relief, Fields appeals. Reversed and remanded.

Hill, Lee & Hill, of San Angelo, for appellant.

CARL, J. J. D. Fields & Co., a firm composed of J. D. Fields and W. J. Fields, brought suit for damages against George S. Allison and J. T. Owens and also for an injunction. The suit originally was in the name of the partnership, and it was alleged that said partnership was engaged in the ranch business in Sutton county, Tex., owning a large body of land, and that the legal and equitable title to surveys 59 and 61, block B, H. E. & W. T. Ry. Co., was in J. D. Fields, and that the legal and equitable title to survey 60, block B, H. E. & W. T. Ry. Co., was in W. J. Fields, and that said surveys, together with a large number of other surveys which they were the legal and equitable owners of, were inclosed by a good fence made of post and wire which surrounded their said pasture, and which separated it from all other lands from any one else adjoining their said pasture, and that plaintiffs were the owners of and had been in possession of all the lands within their said inclosure for more than 20 years; that the fence inclosing said pasture of plaintiffs was constructed in the year 1889, and that said fence had been continuously used by plaintiffs where the same is now located and situated since the year 1889, and that the defendants had cut and torn down said fence on the north line of said surveys 59, 60, and 61 and was removing same.

"In the seventeenth, eighteenth, and nineteenth paragraphs of said amended original petition, plaintiffs pleaded the statutes of five and ten years' limitation as to Surveys 59, 60, and 61, and in each and all of said subdivisions it is alleged that the legal and equitable title to said survey 60 was in W. J. Fields, 'said lands being held, owned, used, and occupied by said firm and partnership of J. D. Fields & Co.'; the field notes of the outside lines of said three surveys being set out by metes and bounds, giving specifically a marked corner for the beginning corner. Plaintiffs prayed that the injunction heretofore granted be made perpetual and for title and possession of said lands. On March 30, 1914, the defendant George S. Allison answered by demurrers and answer. In the last paragraph of said answer said defendant denies all of the allegations in plaintiffs' petition, except that J. D. Fields has the legal title to surveys 59 and 61 and W. J. Fields has the legal title to survey 60 wherever they may be located. On March 31, 1914, the defendant Allison filed a plea in abatement, alleging that the pleadings of plaintiff, as amended, had changed the cause of action and was seeking to recover two sections of land for J. D. Fields and one section for W. J. Fields, said plea in abatement setting up a misjoinder of parties and causes of action, which plea in abatement was sustained by the court as to the recovery of sections 59, 60, and 61 in the same suit. After said plea in abatement had been by the court sustained, it was ordered that the cause proceed in the name of J. D. Fields for the recovery of surveys 59 and 61, and it was agreed in open court that J. D. Fields could proceed as plaintiff without filing new pleadings as to surveys 59 and 61. Plaintiff J. D. Fields thereupon in open court dismissed said cause of action as to defendant J. T. Owens. The cause resolved itself into a boundary suit involving the north boundary line of surveys 59 and 61."

The court submitted but one issue to the jury, and it was as follows:

"Gentlemen of the jury, you will return a plain answer in writing to the following question: Do you find from a preponderance of the testimony that the line of fence separating the pasture of plaintiff J. D. Fields on the south from the pasture of defendant G. S. Allison on the north is located upon the true and correct boundary line of surveys 59 and 61, belonging to plaintiff J. D. Fields?

"To the above question we answer: . . . . . .

". . . . . . . . . . . ., Foreman.

"The jury are the exclusive judges of the credibility of the weight to be given to their testimony."

To this, the jury answered "No," and upon this verdict the court rendered judgment that J. D. Fields recover of George S. Allison (Owens having been dismissed) sections 59 and 61, and that plaintiffs have judgment for title and possession of said lands, and that a writ of restitution issue in favor of plaintiff against defendant for said lands. And it is further provided in said judgment that Allison recover as against Fields all costs of the suit. J. D. Fields alone has perfected his appeal.

[1-3] The first assignment of error complains of the action of the court in sustaining the plea in abatement filed March 31, 1914, because it is said the same came too late, the

parties having announced ready for trial before same was presented and acted upon by the court, and because said plea was not verified. It was not essential that the motion be sworn to, because the matters called to the court's attention were apparent from the pleadings. Compton v. Stage Co., 25 Tex. Supp. 67. Article 1909 of the Revised Statutes reads:

"Pleas shall be filed in the due order of pleading, and shall be heard and determined in such order under the direction of the court."

In the language of Judge Brown, 91 Tex. 86:

"The statute does not prescribe a cast-iron rule upon this subject, but the court may, in its discretion, as it did in this case, hear the exceptions before trying the plea in abatement, which involves a question of fact; and the party who under such circumstances submits exceptions before he submits a plea in abatement will not be held to have waived his plea" (citing Trawick v. Martin-Brown Co., 74 Tex. 522, 12 S. W. 216; Pryor v. Jolly, 91 Tex. 86, 40 S. W. 961).

But W. J. Fields and J. D. Fields & Co. are not appealing, and we do not see how J. D. Fields has been injured individually by the court's ruling. The undisputed evidence shows that title to sections 59 and 61 was in him, and that title to section 60 was in W. J. Fields. If any one was injured by this holding it was J. D. Fields & Co. or W. J. Fields, or both, and they do not prosecute an appeal. This assignment is overruled.

[4, 5] The court did not err in refusing to submit the ten-year statute of limitation, because it was admitted that the Fields' pasture, bounded on the north by the fence in dispute, contained over 5,000 acres, and there are no improvements on the land except the fence around it. This being true, this case would fall within the exception stated in article 5678 of the Revised Statutes. Flack v. Bremen, 45 Tex. Civ. App. 473, 101 S. W. 537; Dunn v. Taylor, 102 Tex. 80, 113 S. W. 265. Neither would the three and five year statutes of limitation apply, because this is a boundary suit and Fields does not claim any land called for in Allison's deed. He says he only claims what he paid for, and he claims what is under his fence because he thinks his deeds for sections 59 and 61 embrace same. In other words, he believes his fence is on the line. Alexander v. Newton, 11 Tex. Civ. App. 618, 33 S. W. 305; Mooring v. Campbell, 47 Tex. 39. The second assignment is overruled.

[6] We do not think the court erred in refusing the charges complained of in the third assignment, since the same merely deal with evidence which would tend to establish the true line. Certainly the first two are such, and the third might be said to be covered by the issue submitted; and the jury found that the fence is not on the line. There is no more reason to single out the Dod survey and charge as to whether it is correct than there is as to whether the Vickery or Saunders surveys are correct. But we do think the court should have submitted to the jury the further issue, viz: If the fence is not on the true boundary of sections 59 and 61, then where is such true boundary with reference to the fence? The finding made establishes nothing except that the fence is not on the true boundary line. Then where is it? Upon that important matter we are left to take our choice from the ideas of the other surveyors. Nothing is settled by this suit, for when the officer goes with his writ of restitution he has absolutely nothing to guide him. The only thing he would know is that the fence is not where it should be, but where he is to put it is more than we can tell. Since we shall reverse the case, we merely make these observations, feeling sure that the trial court will deal with the subject properly upon another trial.

[7, 8] The fourth assignment is overruled because the fact that the fence along sections 59 and 61 was placed there about 1889 and has been there since is established by the undisputed evidence. The fifth clause in this requested charge was properly refused, because it is embraced in and covered by the issue submitted. As to whether the fence is there and how long it has been there was not an issue, because no one disputes these facts. As to whether it is on the true line is another matter, and that was submitted, and the jury found that it is not on the line. That which was in dispute was submitted, and there is no necessity of submitting matters about which there is no controversy.

[9] This is a trespass to try title suit which resolved itself into a boundary dispute. The plaintiff alleged that he was in peaceable and adverse possession of all of the lands in his inclosure (which included sections 59 and 61, the north boundary of which is involved herein), and, further, that the fence upon the north side of the pasture is on the north line of said surveys 59 and 61. The defendant Allison denied that the fence is on the north line, and joined issue as to whether the plaintiff had acquired title by limitation to that part of sections 10, 8, and 5 which might be south of the fence. The appellant insists that, in view of the fact that he had the land under fence and showed a possessory title, the court should have instructed the jury that the burden of showing that the true line is inside appellant's fence was on the appellee.

This is not to be confused with title by limitation to this strip of land, for we have seen that appellant had none, under the facts proven; but since appellant showed that he had so had the land fenced and had possession thereof since 1889, would the prima facie case made upon showing such possessory title shift the burden of proof to the other party to show title in himself to the disputed strip of land? Appellant insists that the burden would so shift, and bases his

contention on Watkins v. Smith, 91 Tex. 591, 45 S. W. 560, and cases therein cited. In that case Judge Gaines says:

"We are thus brought to the question whether, under the established facts of this case, the plaintiff was entitled to recover by reason of his possession of the premises at the time of defendant's entry. In Keys v. Mason, 44 Tex. 140, Chief Justice Moore says: 'It is true the possession of the defendant entitles him to a judgment against the plaintiff, unless the latter shows a prima facie title. He does this when he deraigns title from the sovereignty of the soil down to himself, or if he shows title out of. the government and subsequent possession for sufficient length of time to toll the right of entry, or merely a prior possession to that under which the defendant claims with a regular chain of title connecting himself with such possession,' etc. The remark as to prior possession was made merely by way of argument, and is a dictum, but it is in our opinion a correct statement of the rule. The rule there announced has been frequently applied in this court. House v. Reavis, 89 Tex. 626 [35 S. W. 1063]; Duren v. Strong, 53 Tex. 379; Caplen v. Drew, 54 Tex. 493; Parker v. Railway, 71 Tex. 133 [8 S. W. 541]; Pacific Express Co. v. Dunn, 81 Tex. 85 [10 S. W. 792]; Linard v. Crossland, 10 Tex. 462 [60 Am. Dec. 213]. But it is ingeniously argued that the rule is not applicable to a case where the defendant enters without actual force under a claim of right, for the reason that one who takes possession under claim and color of title cannot be deemed a naked trespasser. It is true that the proposition is most usually announced under the form that prior possession is prima facie evidence of title against a naked trespasser or a mere intruder. But we have been cited to no case, nor have we found any, in which it has been decided that possession is not evidence of title against any wrongdoer. It is not a rule of property. It is a mere rule of evidence, and is founded upon the principle that since ownership is a usual concomitant of possession, it is a reasonable prima facie inference that the possessor of property is the owner of such property."

So it may be taken as the established law of this state that when one presents and proves a possessory title to land, he would be entitled to recover on the strength of the prima facie case so made out. Burke v. Braumiller, 150 S. W. 206; Adels v. Joseph, 148 S. W. 1154; Teagarden v. Patten, 48 Tex. Civ. App. 571, 107 S. W. 912; Austin v. Land Co., 107 S. W. 1142; Mumme v. McCloskey, 28 Tex. Civ. App. 83, 66 S. W. 853; Lockett v. Glenn (Sup.) 65 S. W. 482.

The law of this state places the burden of proof, in trespass to try title, on the party asserting ownership or on the plaintiff, and if we were to hold that mere proof of possession would make out such a case as to shift the burden of proving title on the other party, it virtually would be abrogating the statute. All any one having possession of land would be required to do would be to show that fact and then, although plaintiff himself, he would shift the burden to the other party. This was never the purpose of our law.

A prima facie case is such established facts as the law recognizes as being sufficient to overcome the inertia of the court and to authorize affirmative action by the court, in the absence of evidence on the other side.

Such a case, and only such a case, is made by proof of possession. In Chamberlayne, Mod. Law of Evidence, vol. 2, p. 1173, § 992, it is said that:

"A ruling that such prima facie case has been made out has several important consequences: (1) It shifts the burden of evidence, etc."

But in the first part of the section just quoted the author's meaning is made plain. In speaking of a prima facie case, it is said:

"In other words, it covers a presentation of evidence such as will warrant the judge, in case of a proposition or fact within his function, in announcing as a matter of administration that, until further evidence is produced, he will regard the fact as established, or, in case of a proposition within the decision of the jury, in ruling that, in the absence of further evidence, the jury would be warranted as a matter of reason, i. e., of law, in feeling that their own inertia had been overcome and deciding in accordance with the case submitted."

But "when evidence is introduced to rebut the prima facie case so made by proof of possession, the assumption of law is functus officio and drops out of sight." 16 Cyc. p. 1073. The inference of fact which has been assumed to be correct continues to have its legal weight in the case made, but no more. The gist of the whole matter seems to be that while certain facts may, when uncontested, establish a prima facie case, still the very moment rebutting testimony is introduced, the prima facie case so made is destroyed, and the facts which went to establish the same are only of value in so far as they may have probative force along with other facts upon the trial of the case. And the original party having the burden of proof would still have that burden. So that, while appellant's proof of possession made out a prima facie case of ownership in him, and in the absence of rebutting evidence would have justified the court in rendering judgment for him, still when such rebutting evidence was introduced, he had the same burden of proof as to legal title that he had before such prima facie case was made out by proof of occupancy and possession. The burden of proof did not shift.

The fifth and sixth assignments are overruled.

The seventh assignment is overruled because the court's charge was correct as far as it went; but, in the view we take of the case, it did not go far enough, and did not cover the case being tried. The court should give a charge sufficiently comprehensive to embrace the whole case, and, as given, the charge in this case only covers one side of the case. The objection is that the charge is incorrect. We do not think so, but it is incomplete, an error of omission rather than one of commission.

The ninth assignment is sustained.

"The verdict rendered in this case settled nothing, and was wholly insufficient as the basis of a judgment which would settle the boundary issue." Government Hill Co. v. Mundy, 165 S. W. 80.

[10] There was no error in taxing the costs against appellant, because in his pleadings the defendant admitted that appellant owned sections 59 and 61, which is equivalent to a disclaimer of any interest in these surveys on part of appellee. And if Allison in fact owned a strip of land inside Fields' fence and the jury intended to give it to him, that is a recovery by him which would carry with it the costs. Appellant was properly taxed with the costs, and the tenth assignment is overruled.

The judgment is reversed, and the cause remanded.