**WILBANKS v. MARDETTE OIL CO. et al.**

No. 4917.

Court of Civil Appeals of Texas. Amarillo.

June 13, 1938.

Rehearing Denied Sept. 12, 1938.

A. A. Lumpkin, of Amarillo, for appellant.

W. S. Birge, of Amarillo, for appellees.

STOKES, Justice.

Appellee, a Texas corporation, filed this suit in trespass to try title against appellant, Ophelia E. Wilbanks, Mark Denson, F. A. Denson, Burdette Denson, W. S. Birge and Panhandle Northern Oil Company, a defunct corporation, whose officers at the time it ceased to do business were Mark Denson, F. A. Denson, Burdette Denson and W. S. Birge, and a number of other parties who, by disclaimer and otherwise, were eliminated at the trial. In her answer appellant, in addition to a general denial and plea of not guilty, pleaded in the nature of a cross-action and stockholder's bill in which she sought, on behalf of herself and other stockholders of the Panhandle Northern Oil Company similarly situated, to recover an oil and gas leasehold interest in eighty acres of land located in Carson County, and prayed that a receiver be appointed to take charge of the leasehold interest and such other property as may have been owned by the corporation when it ceased to do business and administer the same under the orders of the court to the end that the property be disposed of, the indebtedness paid and the residue, if any, distributed among the stockholders.

The case was originally filed in the District Court of Carson County but by agreement of all parties the venue was removed to the 108th District Court of Potter County The trial in that court on the 7th of July, 1937, before the court, without the intervention of a jury, resulted in a judgment in favor of appellee, Mardette Oil Company, for the title and possession

of the oil and gas leasehold estate and that appellant take nothing upon her cross-action, from which she has prosecuted this appeal.

The record discloses that the Panhandle Northern Oil Company was chartered as a Texas corporation August 12, 1927, by Allen M. Wilbanks, Jr., J. B. Aiken and James D. Wyman, who became its directors, with an authorized capital stock of 150,000 shares of the par value of $1 per share, of which $100,000 was paid by investing the corporation with the title to certain oil and gas leases. The balance of $50,000 of the capital stock was never paid in and the record does not reveal the disposition that was made of the original oil and gas leases. By December 10, 1930, however, the corporation had no property of any kind except the oil and gas lease here involved which was assigned to it by Mark Denson on the 15th of December, 1928, in consideration of 39,175 shares of the capital stock of the corporation. In some manner not disclosed by the record, Mark Denson, J. D. Wyman and Allen M. Wilbanks, Jr., became the owners of 60,725 shares of the capital stock which were placed in the hands of Mark Denson in trust and with the agreement that enough of it would be sold to pay the expenses of completing an oil and gas well which was being drilled on the lease and to pay the franchise taxes, attorneys' fees and other incidental expenses, the balance, if any, to be held and managed for the benefit of the three owners.

On the 28th of September, 1929, a written agreement was entered into by these three parties in which they agreed that, owing to the great difficulty which they had experienced in selling the stock, the minimum selling price of 45¢ provided in a previous contract should be abrogated and the stock sold at any price which Denson could procure for it. The contract further provided that if it should become necessary to sell an interest in the lease and any interest therein should be sold, the amount of the capital stock of the corporation issued for the leases, viz., 100,000 shares, should be cancelled in the ratio equal to the fractional portion of the lease conveyed. After this agreement was entered into it became necessary to sell a half interest in the lease to pay indebtedness incurred in developing the lease and to secure funds for further development, and on November 11, 1930, a conveyance of the half interest was made to other parties.

It was agreed upon the trial that of the 60,725 shares of stock held in trust by Denson, 35,350 shares were sold prior to December 10, 1930, and, while the capital stock of the corporation was not reduced in the manner provided by law, as far as Wilbanks, Wyman and Denson were concerned, the sale of the half interest in the lease automatically reduced by half their holdings and interest in the 60,725 shares of stock held in trust by Denson.

On August 2, 1930, the right of the Panhandle Northern Oil Company to transact business in the state was forfeited because of its failure to pay the annual franchise tax due May 30, 1930, and on December 10, 1930, its charter was forfeited by the Secretary of State on account of its failure to make proof of final payment of its capital stock. Notwithstanding this, however, the directors continued with the business of the corporation, holding meetings and transacting business as a corporation as though the charter had not been forfeited, and on September 5, 1934, its indebtedness, amounting to $15,-827.76, was taken up by F. A. Denson and three notes executed by the corporation, payable to him, the first two being in the sum of $5,000 each, and the third in the sum of $5,827.76, due and payable October 1st, November 1st, and December 1st, 1934, respectively. To secure the payment of these notes a deed of trust was executed in the name of the corporation by authority of the board of directors. The notes were not paid at maturity and, after publishing notices as provided by the deed of trust, the trustee, on January 1, 1935, sold the remaining half interest owned by the corporation in the oil and gas lease to F. A. Denson for $10,000, and executed and delivered to him a trustee's deed in which the oil and gas lease was conveyed.

On January 23, 1935, F. A. Denson filed in the district court of Carson County a suit in trespass to try title against the Panhandle Northern Oil Company and procured judgment on the 1st of February, 1935, in which the title and possession of the oil and gas lease was decreed to him. Soon thereafter the appellee, Mardette Oil Company, was organized with a capital stock of $15,000 and the lease conveyed to it.

The basis of the contentions of appellant, Mrs. Wilbanks, is that the notes and deed of trust executed by the Panhandle Northern Oil Company under authority of its directors on September 5, 1934, were void for lack of authority in the corporation, after forfeiture of its charter, to transact business, and that the title of appellee, Mardette Oil Company, to the lease necessarily coming through the deed of trust and the foreclosure sale made thereunder is not a valid title and the court erred in rendering judgment in its favor, decreeing to it the title and possession of the oil and gas lease. She contends further that the court erred in denying her the relief for which she prayed to the effect that a receiver be appointed and the property placed in custodia legis to be handled and disposed of under orders of the court for the payment of the debts of the corporation and the balance, if any, distributed among the stockholders.

There is no statement of facts in the record, but the trial court found that appellant owned no stock in the corporation because the sales of the trust stock held in the name of Mark Denson were, in fact, more than half of the stock originally placed with him in trust and, under the written agreement executed by Allen M. Wilbanks, J. D. Wyman and Mark Denson, half of the trust stock was, in effect, surrendered when the half interest in the oil and gas lease was sold to procure funds to pay the expenses of development.

■ Appellant is the surviving wife of Allen M. Wilbanks, Jr., who died January 27, 1933. If she owned any of the capital stock of the Panhandle Northern Oil Company it came to her through the community estate and by assignment from her children of what they inherited from their father as his interest therein. If, therefore, her husband, Allen M. Wilbanks, Jr., did not own any interest in the corporation or its capital stock at the time of his death, appellant obtained none and had no interest in the corporation or its capital stock when this suit was filed. If she had no such interest, it follows she had no right to maintain this suit, and the judgment of the trial court was proper, since the only rights asserted by her are those to which she claims she is entitled by virtue of being a stockholder in the corporation. As we have stated, Mark Denson became the owner of 39,175 shares of the capital stock which was issued to

him in consideration of the assignment by him to the corporation of the oil and gas lease involved in this case. The remaining 60,725 shares became the property of Mark Denson, J. D. Wyman and Allen M. Wilbanks, Jr., and was placed in the hands of Mark Denson in trust, with the agreement and understanding that he would sell so much of it as may be necessary to pay the expenses incident to developing the lease. Under this agreement he sold 35,350 shares. In the written agreement executed by the owners of the trust stock on September 28, 1929, it was agreed that if it should become necessary to sell an interest in the lease and such interest should be sold, the amount of the capital stock that had been issued, viz., 100,000 shares, should be cancelled in the ratio equal to the fractional portion of the lease conveyed. The trial court found it became necessary to sell a half interest in the lease which, under the agreement, in so far as these three parties were concerned, reduced their holdings to 30,362½ shares. These transactions necessarily extinguished all interest which Mark Denson, Wyman and Wilbanks had in the trust stock and as the record does not show Wilbanks to have been the owner of any other stock, the conclusion is inescapable that, at the time of his death, Wilbanks did not own any stock or interest in the corporation. Since appellant does not claim to own any stock other than whatever interest she may have received through her deceased husband, it follows that she had no interest whatever in the subject matter of this suit. The trial court so found and such finding is supported by the record before us.

Appellant presents a number of assignments of error pertaining to other actions of the court, but as we view the record, she, not being the owner of any interest in the subject matter, had no right to recover nor to prosecute the suit and it becomes unnecessary to discuss them.

The judgment of the trial court is affirmed.

### On Motion for Rehearing.

■ In her motion for rehearing appellant insists that we erred in our disposition of the case and in affirming the trial court's judgment upon the ground that appellant could not maintain her contentions because the record shows she had no interest in the subject matter of the controversy. She invokes the familiar rule

that, in trespass to try title, the plaintiff must recover upon the strength of his own title and not upon the weakness of the title of his adversary, and contends with much force that appellee, not having connected itself by a valid chain of title with the title held by Panhandle Northern Oil Company, nor having shown it holds a valid title to the involved property which proceeds from any other source, was not entitled to recover as plaintiff in trespass to try title. She contends, therefore, that the judgment of the trial court should have been in her favor and that we erred in not so holding.

We are, of course, familiar with the rule invoked by appellant in these contentions. It is well settled in this state, however, that the rule is not available to a stranger to the title where prior possession is shown in the plaintiff or his predecessors.

The trial court found that, after the forfeiture of the charter of the Panhandle Northern Oil Company on December 10, 1930, the directors of the corporation did not liquidate the company, but continued to operate the property in the name of the corporation. He found that, in their operation of the property, the directors of the corporation incurred indebtedness of more than fifteen thousand dollars to F. A. Denson and that, to represent and secure this indebtedness, three notes were executed by the directors and a deed of trust executed by them in which they conveyed the oil and gas lease to Lewis Tupin as trustee with power of sale in case of default in payment of the notes. The deed of trust was foreclosed and the oil and gas lease sold to F. A. Denson for $10,000 in accordance with the provisions of the power of sale. The directors, by resolution, acquiesced in the sale by the trustee and Denson thereafter conveyed the property to appellee.

These findings necessarily imply possession of the property by the former directors of the Panhandle Northern Oil Company after its charter was forfeited. The record fails to show any interruption of the possession of the directors before the foreclosure or of Denson or appellee afterwards, until the 2nd of January, 1936, when it is alleged by appellee that appellant entered upon the premises and dispossessed appellee. Indeed, such possession is not challenged by appellant. In defense of the cause of action, appellant alleged that the title of appellee was void and of no force or effect for the reason that it was founded upon the foreclosure of the deed of trust which was void for lack of authority of the board of directors to execute it as well as to execute the notes which it was given to secure.

We have shown in our original opinion that appellant was not the owner of any of the capital stock of the Panhandle Northern Oil Company. The only interest claimed by her in the subject matter of the suit is such as she alleged she owned by virtue of being a stockholder in that company. As such she asserts her rights in the property of the defunct company and also the rights of all other stockholders similarly situated. Since appellant had no such right or interest, she necessarily falls within the category of a naked trespasser. It is a well established rule of law in Texas that the plaintiff in an action of trespass to try title who has established prior possession is permitted to recover as against a trespasser. In such cases his prior possession carries with it the presumption of ownership. Payton v. Loustalott et al., Tex.Com.App., 53 S.W.2d 1012; Allen v. Vineyard et al., Tex.Civ.App., 212 S.W. 266; Estelle et al. v. Hart et al., Tex.Com.App., 55 S.W. 2d 510; Byers et al. v. Christian, et al., Tex.Civ.App., 87 S.W.2d 314; Bankston et al. v. Fagan, Tex.Civ.App., 64 S.W.2d 820; Perez v. Cook, Tex.Civ.App., 208 S.W. 668; Fields & Co. v. Allison, Tex.Civ. App., 171 S.W. 274.

Furthermore, granting that the deed of trust was void, as contended by appellant, because of lack of authority of the former directors of Panhandle Northern Oil Company to execute it, and granting, further, that title through its foreclosure by the trustee is void and that it is the only title to the involved premises that is held by appellee, still appellant, being a stranger to the title, is in no position to attack it. This question was definitely and positively disposed of in principle by the Supreme Court in the case of Buvens v. Brown, 118 Tex. 551, 18 S.W.2d 1057. The facts in that case were more susceptible to a contrary rule than those in the case now before us for the reason that the plaintiff in that case introduced his chain of title and one of its muniments was a deed purporting to have been executed by a married woman joined by her husband in which her separate estate in land was attempted

to be conveyed. The deed was not acknowledged as required by law and was, for that reason, absolutely void as a conveyance. The defendant in error in that case contended that, even if the married woman's deed, unacknowledged, be regarded as absolutely void, yet it was not open to the appellants, entire strangers to the title of the married woman, and trespassers upon the property, to insist upon its invalidity. In disposing of the issue, which was sharply contested, the Supreme Court, speaking through Justice Pierson, said [page 1062]:

"This court has consistently held the privy examination, acknowledgment, and declaration before the officer, as required by the statute, essential to the validity of a married woman's conveyance, and that a defectively acknowledged deed to her separate lands did not convey her title to the vendee, and was void. It repeated that 'to hold otherwise would be practically to repeal the statute.' In order to give the statute effect and to protect the married woman, such holdings were necessary and correct. But we repeat that the only purpose of the statute was to protect the married woman, and it was enacted for her benefit.

"Though a deed of a married woman which is not acknowledged as required by the statute be considered void as to her and her privies, we think the proposition that a stranger to such title cannot be heard to raise the issue of its invalidity is thoroughly reasonable and legally sound. Certainly it is equitable and just."

The question was raised by Justice Stayton in pronouncing the opinion of the Supreme Court in the case of Tom et al. v. Sayers et al., 64 Tex. 339; but it was not decided because, as stated by Judge Stayton, its decision was not necessary to a disposition of the case.

It came before the same court again in the case of Spivy v. March et al., 105 Tex. 473, 151 S.W. 1037, 45 L.R.A.,N.S., 1109, and again was not decided because its decision was not necessary to a disposition of the case; but, by way of dicta, Chief Justice Brown, speaking for the court, said [page 1040]: "We have in this case, by the decision of the Court of Civil Appeals, a stranger setting up a defect which the vendor refused to assert.

The injustice and unreasonable character of the proposition forbids that this court should approve it, unless required to do so by precedents that we dare not disregard. We do not find the decisions of our courts to be of that character."

In deciding the Buvens v. Brown Case, supra, Justice Pierson recognized as dicta the statements of the court in those two cases regarding this question, but he stated that: "Therefore, since it is directly before us and is decisive of the case, we do not hesitate to decide the question raised by Judge Stayton in Tom v. Sayers, 64 Tex. 339, and declared through dicta by Judge Brown in Spivy v. March et al., 105 Tex. [473], 478, 151 S.W. 1037, 45 L.R.A.,N.S., 1109."

It is true the cases to which we have referred involved the right of strangers to attack titles defective because of the absence of legal acknowledgments by married women in conveyances of their separate property and that identical question is not involved in the case now before us; but the gravamen of the holdings of the court in those cases was the right of a stranger to attack the title of the plaintiff in trespass to try title who was in possession of the property and we can see no difference between the asserted right of a trespasser to attack such a title and his right to attack a title that is void for any other reason where it is established, as in this case, that the plaintiff was in possession of the property.

An exception to the rule has been recognized in the case of a junior lien holder whose rights were attempted to be foreclosed by a void sale of the property under a prior lien and it may be that the experience of the courts in dealing with the subject will develop legal or equitable grounds for other exceptions; but we perceive none such in this case. See Estelle v. Hart, supra.

We have carefully considered appellant's motion and the able written and oral arguments presented by her counsel; but we are unable to overcome the conclusion that our original disposition of the case was the correct one and that the judgment of the trial court should be affirmed. The motion for rehearing is, therefore, overruled.