BUVENS et al. v. BROWN. (No. 893—4422.)*

(Commission of Appeals of Texas, Section A. Feb. 9, 1927.)

1. **Trespass to try title ⟳38(1)—Evidence held to create presumption of title by reason of prior possession.**

In trespass to try title, evidence *held* to create presumption of title by reason of prior possession.

2. **Husband and wife ⟳198—Married woman's deed, void because not acknowledged, does not estop her from claiming title.**

Married woman's deed, void because not acknowledged as required by Acts 1st Leg. (1846) p. 156, does not estop her from claiming title.

3. **Husband and wife ⟳194—Trespass to try title ⟳6(1)—Wife's deed, not acknowledged, was void as to wife, but validity cannot be questioned by stranger to wife's title in trespass to try title (Acts 1st Leg. [1846] p. 156).**

Deed from husband and wife, which was not acknowledged by wife as required by Acts 1st Leg. (1846) p. 156, was void as to husband and wife, but validity cannot be questioned by strangers to wife's title.

4. **Adverse possession ⟳111—Title by limitation must be pleaded.**

In trespass to try title, court could not conclude that plaintiff had acquired title by limitation under the 5 or 10-year statute, where title by limitation was not pleaded.

Certified Questions from Court of Civil Appeals of Ninth Supreme Judicial District.

Action by E. R. Brown against P. L. Buvens and others. Judgment for plaintiff, and defendants appealed to the Court of Civil Appeals, by which questions were certified to the Supreme Court. Questions answered.

Ward & Ward, of Houston, for appellants. Thos. H. Stone and Andrews, Streetman, Logue & Mobley, all of Houston, for appellee.

BISHOP, J. The following statement and certified questions are submitted by the Court of Civil Appeals for the Ninth supreme judicial district, to wit:

"The above entitled and numbered cause is pending in this court, and has been submitted, but not decided; this court being in doubt as to the disposition that should be made of certain legal questions that are presented. Therefore we certify to your honorable court the following statement and questions, which we respectfully request you to answer:

"The parties are styled plaintiff and defendants as in the trial court.

"Plaintiff sued defendants August 20, 1921, in form of trespass to try title for a tract of land alleged to be a part of the Nathaniel Lynch league in Harris county, Tex. Defendants pleaded not guilty, and also, by cross-action, alleged ownership in fee simple of the lands described in plaintiff's petition, and asked for judgment removing cloud from their title, and for general relief. There were no pleas of limitation by either party. Plaintiff introduced the following evidence of title:

"(1) Grant from the Mexican government to Nathaniel Lynch, dated August 19, 1824, issued by the Baron de Bastrop and Stephen F. Austin.

"(2) Will of Nathaniel Lynch, dated February 12, 1837, probated April 13, 1837, devising certain property not in controversy to his son Benjamin Franklin Lynch, and the remainder to his other children, subject to the control of his wife, Frances Lynch, during her natural life.

"(3) Partition of the estate of Nathaniel Lynch by proceedings in probate court of Harris county, Tex. Petition was filed by Frances Hardin, former wife of Nathaniel Lynch, then the wife of Martin Hardin, administratrix of the estate of Nathaniel Lynch, deceased, signed by her husband and Martin Hardin, for herself and the other heirs, namely, William Lynch, Benjamin F. Lynch, Elizabeth Gaffield, and John Lynch, a minor 20 years of age. The partition was directed by order dated April 17, 1843. Commissioners reported August 26, 1843, dividing the league between the children named and setting apart to Frances Hardin the 400-acre tract including the land in suit. This report was confirmed by judgment of the probate court August 28, 1843.

"(4) The grant to Nathaniel Lynch states that he was put into possession. The partition proceedings between Frances Hardin and the Lynch heirs state that the Nathaniel Lynch homestead was on the Nathaniel Lynch League, and the homestead tract of 846 acres was awarded to Frances Hardin in the partition.

"(5) The following instrument:

"'State of Texas, County of Harris.

"'Know all men to whom it may concern: That I, Frances Hardin have this the 27th day of September, 1847, bargained, sold, and set over and delivered unto John Rundell (both of the county and state aforesaid) a certain

---

⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Rehearing granted March 30, 1927.

tract or parcel of land, lying and being on the east side and fronting on San Jacinto Bay, known as Marsh Point, it being a part of a league granted to Nathaniel Lynch by the Mexican government and a part of the part set apart by commissioners appointed by the probate court of said county to divide the land amongst the heirs of said N. Lynch, deceased, I, the said Frances Hardin, former wife of said Nathaniel Lynch, do warrant and defend unto the said John Rundell, his heirs or assigns, the aforesaid Marsh Point supposed to be 400 acres more or less, for the sum of $200 to me in hand paid, the receipt whereof I hereby acknowledge the day and date above written, and to which I hereunto set my name and affix my scroll as a seal.

" 'Signed October 7, 1847.

" 'Frances Hardin.  [Seal.]
" 'Martin Hardin.  [Seal.]

" 'Attest:

" 'Charles H. Graves.
" 'John I. Lynch.

" 'The State of Texas, Harris County.

" 'Before me, W. R. Baker, clerk in and for Harris county, this day came Chas. H. Graves, of this county, to me well known, who on oath declared that Frances and Martin Hardin acknowledged the execution of the foregoing deed for the purpose and consideration therein contained, that he signed the name as a witness and knows all the signatures thereto to be genuine.

" 'Witness my hand and seal of Harris county, November 1st, 1847.

" 'W. R. Baker, Clerk.  [Seal.]

" 'Recorded November 2, 1847, at 9 o'clock a. m. W. R. Baker, Clerk Harris County. In volume M, page 264.' "

"(6) Will of Elizabeth Rundell, dated November 24, 1852, probated June, 1868, devising all of her property to her husband, John Rundell.

"(7) Judgment partitioning the estate of John Rundell and wife among their heirs and setting apart to Clara Wasson 'the tract of 400 acres described in said decree (referring to the partition in the Lynch estate) as the Marsh Point tract in Harris county.'

"(8) Deed from Clara Wasson and husband, W. C. Wasson, to Garrett L. Scott, dated August 7, 1883, recorded July 13, 1889, conveys other lands adjoining the land in controversy out of the Lynch Survey, and the following: 'Another tract of 400 acres out of said Nathaniel Lynch league known as the Marsh tract and fronting on San Jacinto Bay, being the tract conveyed to John Rundell by M. & F. Hardin by deed in Volume M, page 264, Harris County, Deed Records.'

"(9) Deed from G. L. Scott and wife to Q. A. Wooster and W. D. Crow, dated October 21, 1892, recorded October 22, 1892, conveying 190¼ acres adjoining the land in controversy and other lands and the following: '400 acres out of said Nathaniel Lynch league known as the Marsh Point, and fronting on said San Jacinto Bay, being the tract conveyed to John Rundell by Frances and Martin Hardin by deed which is record in Harris County Deed Records, in Volume M, p. 264.'

"(10) Judgment of the district court of Harris county, dated February 12, 1894, in favor of Q. A. Wooster and W. D. Crow as plaintiffs and against Wm. Gaffield and Ola Lynch and H. C. (Richard) Lynch, in which plaintiffs recover against said defendants other lands and the following: '(Another tract of 400 acres out of said Nathaniel Lynch league known as Marsh Point and fronting on San Jacinto Bay, being the same tract conveyed to John Rundell by Frances and Martin Hardin by deed which is recorded in Harris County Deed Records in Volume M, on page 264, and divesting all title to said land out of said defendants and vesting the same in said plaintiffs.'

"(11) Partition deed between Q. A. Wooster and W. D. Crow, dated January 20, 1893, by which Q. A. Wooster acquired in severalty the tract of 400 acres out of said Nathaniel Lynch league known as the Marsh Point.

"(12) Proceedings in the estate of Q. A. Wooster, deceased, consisting of:

"(a) Application to probate his will.

"(b) Order probating the same in the county court of Harris county, Tex., in the year 1909.

"(c) The will of Q. A. Wooster and the codicil thereto as probated; said will and the codicil appointing Alfred Q. Wooster executor of said will, with full power to sell any of the property of said estate.

"(13) Deed from Alfred Q. Wooster, executor of Q. A. Wooster, to E. R. Brown, plaintiff in this case, conveying other adjoining lands and the following: 'A tract in the Nathaniel Lynch league lying between the San Jacinto river channel and Crystal Lake, known as the marsh tract, and consisting of 400 acres more or less.'—deed being dated March 11, 1910.

"All of the deeds and other instruments above mentioned were duly recorded in Harris county, Tex., excepting, of course, the question as to the proper registration of the deed from Hardin and wife to Rundell.

"Defendants introduced the following evidence of title:

"(1) Oil and gas permit issued by the commissioner of the general land office to Anna Lantau, dated October 3, 1917, and describing 285 acres of land and embracing to that extent the 400 acres described in the deed to plaintiff as the marsh tract.

"(2) Letter and application to the commissioner of the general land office to purchase by defendant P. L. Buvens land described in application to survey hereinafter referred to. Letter and application dated September 2, 1919. (Records of the general land office.)

"(3) Application to the commissioner of the general land office and obligation of P. L. Buvens to the state of Texas for the purchase of 372.6 acres of land, dated February 13, 1920, showing payment by P. L. Buvens of $931.50, and his agreement and obligation to pay to the state of Texas the sum of $36,-328.50, with 5 per cent. interest, being the land sued for. Records of the general land office.

"(4) Application to J. S. Boyles, county surveyor of Harris county, Tex., to survey, as unsurveyed lands of the public free school fund, said application dated October 14, 1919, describing the land to be surveyed as follows: 'Situated in Harris county, Tex., about 18 miles southeast from the county seat and being

all of the land lying south of the Lynch within the following boundaries: Beginning at a point on the Lynch boundary on the west bank of Crystal Bay, where the Lynch field notes call to cross a marshy point; thence with the waters edge of Crystal Bay with its meanders to the east bank of San Jacinto river on the Houston Ship Channel; thence in a northerly direction up the San Jacinto river, meandering the east bank of the water's edge to the point where the said Lynch line cuts across the peninsula; thence along the Lynch line to. the place of beginning—the land covered by this application being the vacant land on the peninsula excluded in the Lynch survey and bounded by the Lynch survey, Crystal Bay and Scott's Bay, and the San Jacinto river. This description is intended to cover all of the vacant land lying outside of the Lynch survey and within the boundaries herein designated.' Records of General Land Office.

"(5) Award and field notes awarding to P. L. Buvens 372.6 acres of land to which are attached field notes, said award being dated February 14, 1920, and the land described in field notes attached thereto being the land herein sued for and described in plaintiff's petition. Recorded Ledger 107, p. 490, Records of the General Land Office.

"(6) Deed from P. L. Buvens to W. H. Ward and wife, Hortense Ward, dated February 17, 1920, conveying said 372.6 acres.

"(7) Deed from W. H. Ward to Hortense Ward dated April 14, 1920, conveying said land and other property.

"We find that the evidence of plaintiff was sufficient to show actual possession of said tract of land and the adjoining lands conveyed by the same deeds to plaintiff G. L. Scott and those holding under Scott's deed, covering the period from the date of the deed to G. L. Scott, 1892, down to 1918.

"Plaintiff introduced evidence showing payment of all taxes upon said land for a period of more than ten years prior to the institution of this suit. Plaintiff's original petition in the case was filed August 20, 1921.

"The only actual possession of said land by defendants at any time was shown by the testimony of the defendant Ward, as follows: 'It had been occupied for a few months, I do not know how many. I put a man on it, and he was a trapper and hunter, and he said trapping and hunting was not as good as it was further upon the San Jacinto river, and he didn't want to stay there. That house I was talking about was not gone the last time I was there, in May or June of this year (1923). I do not remember the exact date I put the house there. It was in February, 1920; we purchased it, and it was just a few months after the purchase that I put the house there; I do not know exactly. I could refer to my checks which would show when I paid for the lumber for that house; but offhand I would say that it was some time during the summer or fall of the year we purchased it that I put the house there. I kept a man there for a while after that, but then thereafter there was no one there; outside of that neither I nor anybody who is connected with my title has had any sort of possession of the property at all before or since then.'

"The suit was tried before a jury, and the case was submitted on special issues. The only issues of fact submitted to the jury were with reference to the boundaries of the Nathaniel Lynch survey. There was much testimony raising an issue of fact as to whether the land in controversy was included within the boundaries of the Lynch league. The jury found upon what we have concluded was sufficient evidence that the land was included within the Nathaniel Lynch league. No issue of fact submitted to the jury, and no request was made for the submission of any issue to the jury with reference to prior possession, presumption of a deed, or any of the statutes of limitation.

"We have reached the conclusion that the deed from Frances Hardin and husband, of date October 7, 1847, to John Rundell, was ineffectual to convey the title of Mrs. Hardin to the land in controversy to Rundell (she being at that time a married woman and the property being her separate property), because that deed was not acknowledged by Mrs. Hardin as required by law at that time. See acknowledgment to said deed on page 3 of this certificate.

"Questions Certified.

"Question No. 1: Are we correct in the conclusion that the deed from Mrs. Hardin and husband to Rundell did not pass Mrs. Hardin's title to Rundell, because that deed was not acknowledged by Mrs. Hardin as required by law at the date of that deed?

"Question No. 2: It having been established by the verdict of the jury, as we have stated, that the land involved in this suit is included in the Nathaniel Lynch grant, which verdict we have concluded must be sustained by us, can the appellants (defendants below), who are strangers to the Lynch title, as shown by the foregoing statement, question the validity of the deed from Mrs. Hardin and her husband to John Rundell, dated October 7, 1847, which deed constitutes a necessary link in appellees' record chain of title from the sovereignty? As bearing upon this question, see Spivy v. March, 105 Tex. 473, 151 S. W. 1037, 45. L. R. A. (N. S.) 1109; Houston Oil Co. of Texas v. Sudduth (Tex. Civ. App.) 171 S. W. 556.

"Question No. 3: Did the plaintiff below, appellee here, by putting in evidence the deed from Mrs. Hardin and husband, dated October 7, 1847, to John Rundell, by which deed, if valid, they would deraign perfect title from the sovereignty to the land in controversy (assuming that such deed was ineffectual to pass Mrs. Hardy's title), thereby destroy or rebut the presumption of title in the plaintiff arising from his prior possession of the land in controversy? In this connection, we would further state that it is our conclusion that the plaintiff's prior possession of the land in controversy was of such character as would have authorized the trial court to presume that the plaintiff had title under the rule of prior possession as it obtains in this state, unless the plaintiff, by putting in evidence the deed from Mrs. Hardin and husband to Rundell, took away the plaintiff's right to rely upon the rule of prior possession. As pertaining to this question, we call attention to the case of McCarthy v. Houston Oil Co. of Texas et al., 221 S. W. 307 (opinion by this court), and also to the

opinion of the Commission of Appeals of Texas in the same case, reported in 245 S. W. page 651, and authorities therein cited.

"Question No. 4: The plaintiff in this case not having interposed any plea of title by limitation to the land in controversy, was it open to the trial court to conclude that the plaintiff had acquired title by limitation under either the five or ten years' statute of limitation, assuming that the evidence was sufficient to have sustained such a plea of limitation?"

The evidence shows actual possession of the land involved in this suit by the plaintiff and those under whom he claims title from the date of the deed to G. L. Scott, August 7, 1883, down to 1918, and the payment of all taxes due thereon for a period of more than ten years prior to the institution of this suit. The defendants are not claiming this land as part of the Lynch league. Their only claim of title is based on the contention that the land is no part of this league. They are shown to have no claim of title, and the plaintiff may recover upon the presumption of title arising from his prior possession, unless the deed from Frances and Martin Hardin to John Rundell introduced in evidence, by reason of its being void, prevents him from doing so.

[1] In the case of McCarthy v. Houston Oil Co., of Texas, 221 S. W. 307, where it was affirmatively shown that the only claim of title was under a void deed, the Court of Civil Appeals held that prior possession thereunder was not sufficient to raise the presumption of title, and that such showing negatived any presumption of title in the plaintiff. In that case the Commission of Appeals expressly approved this holding. 245 S. W. 651. There, however, the possession was shown to have had reference to no claim other than that under the void deed. The record in this case contains no such showing. Here there is evidence upon which a presumption of title may arise. Frances Hardin was the wife of Nathaniel Lynch, the original grantee. The record is silent as to whether Nathaniel Lynch was ever married to any one except Frances Hardin, and as to whether the children and heirs of Nathaniel Lynch were also the children of Frances Hardin. These children, except one, Elizabeth Gaffield, bore the name of Lynch. In 1894 Q. A. Wooster and W. D. Crow secured judgment against William Gaffield, Ola Lynch, and H. C. (Richard) Lynch for this land. The identity of names would suggest a possibility at least that these parties held title through Frances Hardin. If they did, the judgment against them in favor of Wooster and Crow under whom the plaintiff claims, would have conferred title on the plaintiff, and proof that they had such title would have been sufficient to show a perfect chain of title from the sovereignty to plaintiff, even though the deed from Frances and Martin Hardin to John Rundell conveyed no title. The evidence being consistent with this possible showing, we are of opinion that prior possession for many years shown by the evidence furnishes a sufficient basis upon which a presumption of title should be held to rest, and that the exhibition of this deed in evidence, even if void, would not have the effect to destroy or rebut the presumption of title in plaintiff by reason of prior possession.

The Supreme Court in the case of Mayers v. Paxton, 78 Tex. 196, 14 S. W. 568, announced the rule of law to be that "limitation when relied upon either as a ground of action or of defense must be specially pleaded," and in the case of Molino v. Benavides, 94 Tex. 413, 60 S. W. 875, says that it is "not inclined to recede from the rule announced in Mayers v. Paxton as to the necessity of pleading specially the statute of limitations where the plaintiff in an action of trespass to try title seeks to recover upon a title acquired by adverse possession." The presumption of title arising from long-continued possession is not that such possession was adverse to the prior owner of the title, but that title is held from and under such prior owner.

[2] The land in controversy was the separate property of Frances Hardin, who was a married woman at the time of the deed from her and her husband to John Rundell. This deed was not acknowledged by her as was then required by the act of 1846 (Acts 1st Leg. p. 156). The purpose of this act was to protect the rights of married women. The act recognizes the capacity of married women to convey their separate real property by deed, and prescribes the manner in which they may do so. Its effect is to declare that any attempt on their part to convey land owned by them in their separate right by deed, without complying with its requirements, shall, as to them and those claiming under them, be an absolute nullity. Cole v. Bammel, 62 Tex. 111. Such deed does not estop them from claiming title. In cases in which it has been sought to interpose such deeds as an estoppel against them or those claiming title under them, it has been repeatedly held that same are absolutely void. Berry v. Donley, 26 Tex. 743; Veeder v. Gilmer, 103 Tex. 458, 129 S. W. 595; Holland v. Votaw, 62 Tex. Civ. App. 91, 130 S. W. 882 (writ of error refused and opinion by Supreme Court, 103 Tex. 534, 131 S. W. 406). Our attention has been called to no case in which it has been expressly held that such a deed should be considered void when attacked by a stranger to the title held by the married woman. In the case of March v. Spivy, 63 Tex. Civ. App. 449, 133 S. W. 529, the Court of Civil Appeals in effect made this holding, and the Supreme Court, in its opinion in that case (105 Tex. 473, 151 S. W. 1037, 45 L. R. A. [N. S.] 1109) says:

"It is not necessary for us to decide in this case whether a stranger to the title should ever be permitted to interpose this defense, but

we are firmly convinced by authority and sound reasoning that, under such conditions, a court should construe the language as Mrs. Hensley and her heirs have construed it by their inaction for a half century. If a stranger to the title be permitted to make such objection, courts should cast upon him the burden of establishing the invalidity. We have in this case by the decision of the Court of Civil Appeals a stranger setting up a defect which the vendor refused to assert. The injustice and unreasonable character of the proposition forbids that this court should approve it, unless required to do so by precedents that we dare not disregard. We do not find the decisions of our courts to be of that character."

[3] As the purpose of the requirements contained in this enactment was to protect the rights of married women, and for this reason such deeds have been held void in so far as they affect their rights, we have concluded that the courts would not be warranted in holding that, by reason of such requirements, this protection should extend to and include those who are strangers to the titles held by those whom the Legislature intended to protect, in view of the manifest injustice which would result from such holding. The deed of Frances and Martin Hardin is, under the established facts in this case, evidence of title in John Rundell, and defendants, being strangers to the title of Frances Hardin, are in no position to question its validity.

[4] We recommend that the questions certified be all answered in the negative, except the first. To the first we recommend the answer that the deed passed no title as against the married woman and those claiming under her, but passed title as to all others.

CURETON, C. J. The opinion of the Commission of Appeals answering certified questions is adopted, and ordered certified to the Court of Civil Appeals.