P. L. BUVENS ET AL. v. E. R. BROWN.

No. 4422.   Decided June 29, 1929.
(18 S. W., 2d Series, 1057.)

*W. A. Keeling, Fulbright, Crooker & Freeman,* and *Ward & Ward,* for appellants.

From time to time the courts have said with reference to such an instrument as is here discussed, that it "cannot be ratified," "can-

not be the basis of an estoppel," "cannot be notice," "cannot be offered in evidence; cannot be recorded," "cannot be admitted in evidence as ancient instrument or otherwise," "cannot be held color of title under the three years statute," "cannot be the basis for five years limitation," *"cannot be validated by legislative enactment,"* "such deed is an absolute nullity," "such instruments are not deeds at all," "as though it had never been written," "is mere waste paper," "conveyed no title." Merriman v. Blalock, 121 S. W., 552; Daniels v. Mason, 90 Texas, 240; Hayden v. Moffitt, 74 Texas, 647; Parker v. Chancellor, 73 Texas, 479; Veeder v. Gilmer, 103 Texas, 458; Kinney v. Abney, 107 S. W., 885; Merriman v. Blalock, 122 S. W., 404; Holland v. Votaw, 131 S. W., 406; Cole v. Bammell, 62 Texas, 111; Cross v. Everts, 28 Texas, 523; Coffee v. Hendricks, 66 Texas, 680; Davis v. Agnew, 67 Texas, 206.

This suit, while in the form of trespass to try title, and governed by the rules applicable to such class of suits, resolved itself, as stated by appellee, into a boundary question. In such a suit, undertaking to determine a boundary line as between two different surveys, the litigants will naturally each be a stranger to the title of the other. It is a fundamental rule in such cases that the plaintiff must show title to the land claimed by him—and must prevail by virtue of the strength of his own title, not the weakness of the defendants'—otherwise the defendants will recover. Greenlee v. Taylor, 79 Texas, 157; Stroud v. Springfield, 28 Texas, 671; Byers v. Wallace, 87 Texas, 505; McGee v. Paul, 110 Texas, 461; Kinney v. Vinson, 32 Texas, 127; Adams v. House, 61 Texas, 640; Styles v. Gray, 10 Texas, 503; King v. Elson, 30 Texas, 252.

The question of what survey the land was a part of, whether in the Nathaniel Lynch League or outside of the Nathaniel Lynch League, could not be material until the plaintiff who had sued for it as a part of the Nathaniel Lynch League in trespass to try title should show himself entitled to recover it as a part of such survey in such suit. Of course, the defendants, claiming in a different survey, would be strangers to the title in the Lynch Survey—the same situation is presented in almost every boundary suit—but certainly that fact could not operate to relieve plaintiff (appellee) of his necessity to prove title in himself and the rule has uniformly been that a defendant in a boundary suit—regardless of his being stranger to plaintiff's title—may avail himself of defects in plaintiff's title and defend by showing an outstanding superior title. Dean v. Furrh, 124 S. W., 431; Hunter v. Hale, 233 S. W., 1009;

Simkins, Equity, 271; Holland v. Votaw, 130 S. W., 682; Mason v. Russell, 1 Texas, 729; Fowler v. Stoneum, 11 Texas, 501; Cummings v. Powell, 8 Texas, 86; Pool v. Foster, 49 S. W., 923; Kenley v. Robb, 245 S. W., 73; La Pice v. Caddanhead, 53 S. W., 66; De Roach v. Clardy, 113 S. W., 22; Hill v. Grant, 44 S. W., 1016; Uvalde County v. Oppenheimer, 115 S. W., 904; Dupree v. Frank, 39 S. W. 994; Meyer v. Hale, 23 S. W., 990; Tobar v. Losano, 25 S. W., 973 Trimble v. Burroughs, 113 S. W., 554; Pool v. Unknown Heirs, 49 S. W., 928; Hooper v. Hall, 35 Texas, 83; also cases first above cited.

*Thomas H. Stone* and *Streetman, Logue & Mobley,* for appellee.

The deed of Martin Hardin and Francis Hardin of date October 7th, 1847, to John Rundell, is not for all purposes and in every respect a void deed, since it has been three time held as to this character of deed by a married woman of her separate estate lands that though insufficiently authenticated, yet if not attacked by the married woman or her heirs, but acquiesced in for a great number of years, they possessed such force and validity as to pass the title as against a stranger attacking the deeds for the defects in authentication alleged to invalidate them, but which defects were waived by the interested parties. Spivey v. March, 105 Texas, 473; Houston Oil Co. of Texas v. Sudduth, 171 S. W., 556, 560, 561; Wilson v. Fireman's Fund Insurance Co., 274 S. W., 179.

The possession under the Hardin deed is a rightful possession as long as it is not questioned by the Hardins. Spivey v. March, 105 Texas, 473; Houston Oil Co. of Texas v. Sudduth, 171 S. W., 556, 560, 561; Gray v. Thompson, 23 S. W., 926, 927; Wilson v. Fireman's Fund Insurance Co., 274 S. W., 179.

While the deed of a married woman not executed or acknowledged in accordance with the statute is ineffectual to pass the record title, such instrument is not wholly worthless for all purposes nor as to all classes of persons. Dalton v. Rust, 22 Texas, 134; Gregory v. Van Vleck, 21 Texas, 46; Johnson v. Taylor, 60 Texas, 365; Fordtran v. Perry, 60 S. W., 1000.

If such deed be regarded as absolutely void, it is not open to the appellants, entire strangers and absolute trespassers upon the property, to insist upon its invalidity. Fisk v. Miller, 13 Texas, 225; Tom v. Sayers, 64 Texas, 339; Spivey v. March, 105 Texas, 473; Houston Oil Co. v. Sudduth, 171 S. W., 556; Wilson v. Fireman's Fund Ins. Co., 274 S. W., 179.

MR. JUSTICE PIERSON delivered the opinion of the court.

The following statement and certified questions are submitted by the Court of Civil Appeals for the Ninth Supreme Judicial District, to-wit:

"The above entitled and numbered cause is pending in this court, and has been submitted, but not decided, this court being in doubt as to the disposition that should be made of certain legal questions that are presented. Therefore, we certify to your Honorable Court the following statement and questions, which we respectfully request you to answer:

"The parties are styled plaintiff and defendants as in the trial court.

"Plaintiff (Brown) sued defendants (Buvens et al.) August 20, 1921, in form of trespass to try title for a tract of land alleged to be a part of the Nathaniel Lynch League in Harris County, Texas. Defendants (Buvens et al.) pleaded not guilty, and also, by cross action, alleged ownership in fee simple of the lands described in plaintiff's petition, and asked for judgment removing cloud from their title, and for general relief. There were no pleas of limitation by either party. Plaintiff (Brown) introduced the following evidence of title:

"(1) Grant from the Mexican Government to Nathaniel Lynch, dated August 19, 1824, issued by the Baron de Bastrop and Stephen F. Austin.

"(2) Will of Nathaniel Lynch, dated February 12, 1837, probated April 13, 1837, devising certain property not in controversy to his son Benjamin Franklin Lynch, and the remainder to his other children, subject to the control of his wife, Frances Lynch, during her natural life.

"(3) Partition of the estate of Nathaniel Lynch by proceedings in Probate Court of Harris County, Texas. Petition was filed by Frances Hardin, former wife of Nathaniel Lynch, then the wife of Martin Hardin, administratrix of the estate of Nathaniel Lynch, deceased, signed by her husband and Martin Hardin, for herself and the other heirs, namely, William Lynch, Benjamin F. Lynch, Elizabeth Gaffield, and John Lynch, a minor 20 years of age. The partition was directed by order dated April 17, 1843. Commissioners reported August 26, 1843, dividing the league between the children named and setting apart to Frances Hardin the 400-acre-tract including the land in suit. This report was confirmed by judgment of the probate court August 28, 1843.

"(4) The grant to Nathaniel Lynch states that he was put into possession. The partition proceedings between Frances Hardin and the Lynch heirs state that the Nathaniel Lynch homestead was on the Nathaniel Lynch League, and the homestead tract of 846 acres was awarded to Frances Hardin in the partition.

"(5) The following instrument:

" 'STATE OF TEXAS, COUNTY OF HARRIS.

" '*Know all men to whom it may concern:*

" 'That I, Frances Hardin have this the 27th day of September, 1847, bargained, sold, and set over and delivered unto John Rundell (both of the county and state aforesaid) a certain tract or parcel of land, lying and being on the east side and fronting on San Jacinto Bay, known as Marsh point, it being a part of a league granted to Nathaniel Lynch by the Mexican Government and a part of the part set apart by Commissioners appointed by the probate court of said county to divide the land amongst the heirs of said N. Lynch, deceased, I, the said Frances Hardin, former wife of said Nathaniel Lynch, do warrant and defend unto the said John Rundell, his heirs or assigns the aforesaid Marsh point supposed to be 400 acres more or less, for the sum of $200.00 to me in hand paid, the receipt whereof I hereby acknowledge the day and date above written, and to which I hereunto set my name and affix my scroll as a seal.

Signed October 7, 1847.

Frances Hardin. (Seal)

Martin Hardin. (Seal)

" 'Attest:

" 'Charles H. Graves.

" 'John I. Lynch.

" 'The State of Texas, Harris County.

" 'Before me, W. R. Barker, Clerk in and for Harris County, this day came Chas. H. Graves, of this County, to me well known, who on oath declared that Frances and Martin Hardin acknowledged the execution of the foregoing deed for the purposes and consideration therein contained, that he signed the same as a witness and knows all the signatures thereto to be genuine.

" 'Witness my hand and seal of Harris County, November 1st, 1847.

W. R. Barker, Clerk. (Seal)

" 'Recorded November 2nd, 1847, at nine o'clock A. M., W. R. Barker, Clerk Harris County. In Volume M, page 264.'

"(6) Will of Elizabeth Rundell, dated November 24, 1852, probated June, 1868, devising all of her property to her husband, John Rundell.

"(7) Judgment partitioning the estate of John Rundell and wife among their heirs and setting apart to Clara Wasson 'the tract of 400 acres described in said decree (referring to the partition in the Lynch estate) as the marsh point tract in Harris County.'

"(8) Deed from Clara Wasson and husband, W. C. Wasson, to Garrett L. Scott, dated August 7, 1883, recorded July 13, 1889; conveys other lands adjoining the land in controversy out of the Lynch Survey and the following:

"'Another tract of 400 acres out of said Nathaniel Lynch league known as the marsh tract and fronting on San Jacinto Bay, being the tract conveyed to John Rundell by M. & F. Hardin by deed in Volume M, page 264, Harris County Deed Records.'

"(9) Deed from G. L. Scott and wife to Q. A. Wooster and W. D. Crow, dated October 21, 1892, recorded October 22, 1892, conveying 190¼ acres adjoining the land in controversy and other lands and the following:

"' 400 acres out of said Nathaniel Lynch League known as the marsh point and fronting on said San Jacinto Bay being the tract conveyed to John Rundell by Frances and Martin Hardin by deed which is recorded in Harris County Deed Records in Vol. M, page 264.'

"(10) Judgment of the district court of Harris County, dated February 12, 1894, in favor of Q. A. Wooster and W. D. Crow as plaintiffs and against Wm. Gaffield and Ola Lynch and H. C. (Richard) Lynch, in which plaintiffs recover against said defendants other lands and the following:

"'Another tract of 400 acres out of said Nathaniel Lynch league known as marsh point and fronting on San Jacinto Bay, being the same tract conveyed to John Rundell by Frances and Martin Hardin by deed which is recorded in Harris County Deed Records in Vol. M, on page 264, and divesting all title to said land out of said defendants and vesting the same in said plaintiffs.'

"(11) Partition deed between Q. A. Wooster and W. D. Crow, dated January 20, 1893, by which Q. A. Wooster acquired in severalty the tract of 400 acres out of said Nathaniel Lynch league known as the marsh point.

"(12) Proceedings in the estate of Q. A. Wooster, deceased, consisting of:

"(a) Application to probate his will;

"(b) Order probating the same in the County Court of Harris County, Texas, in the year 1909;

"(c) The will of Q. A. Wooster and the codicil thereto as probated, said will and the codicil appointing Alfred Q. Wooster executor of said will, with full power to sell any of the property of said estate.

"(13) Deed from Alfred Q. Wooster, executor of Q. A. Wooster, to E. R. Brown, plaintiff in this case, conveying other adjoining lands and the following:

"'A tract in the Nathaniel Lynch League lying between the San Jacinto River Channel and Crystal Lake known as the Marsh Tract, and consisting of 400 acres more or less,' deed being dated March 11, 1910.

"All of the deeds and other instruments above mentioned were duly recorded in Harris County, Texas, excepting, of course, the question as to the proper registration of the deed from Hardin and wife to Rundell.

"Defendants introduced the following evidence of title:

"(1) Oil and Gas permit issued by the Commissioner of the General Land Office to Anna Lantau, dated October 3, 1917, and describing 285 acres of land and embracing to that extent the 400 acres described in the deed to plaintiff as the marsh tract.

"(2) Letter and application to the Commissioner of the General Land Office to purchase by defendant P. L. Buvens land described in application to survey hereinafter referred to. Letter and application dated September 2, 1919. (Records of the General Land Office.)

"(3) Application to the Commissioner of the General Land Office and Obligation of P. L. Buvens to the State of Texas for the purchase of 372.6 acres of land, dated February 13, 1920, showing payment by P. L. Buvens of $931.50, and his agreement and obligation to pay to the State of Texas the sum of $36,328.50, with 5% interest, being the land sued for. (Records of the General Land Office.)

"(4) Application to J. S. Boyles, County Surveyor of Harris County, Texas, to survey, as unsurveyed lands of the Public Free School Fund, said application dated October 14, 1919, describing the land to be surveyed as follows:

"'Situated in Harris County, Texas, about 18 miles southeast from the county seat and being all of the land lying south of the Lynch within the following boundaries: Beginning at a point on the Lynch boundary on the west bank of Crystal Bay; where the

Lynch field notes call to cross a marshy point; thence with the water's edge of Crystal Bay with its meanders to the east bank of San Jacinto River on the Houston Ship Channel; thence in a northerly direction up the San Jacinto River meandering the east bank of the water's edge to the point where the said Lynch line cuts across the peninsula; thence along the Lynch line to the place of beginning; the land covered by this application being the vacant land on the peninsula excluded in the Lynch survey and bounded by the Lynch survey, Crystal Bay and Scott's Bay and the San Jacinto River, this description is intended to cover all of the vacant land lying outside of the Lynch survey and within the boundaries herein designated.' (Records of General Land Office.)

"(5) Award and field notes awarding to P. L. Buvens 372.6 acres of land to which are attached field notes, said award being dated February 14, 1920, and the land described in field notes attached thereto being the land herein sued for and described in plaintiff's petition. (Recorded Ledger 107, page 490, Records of the General Land Office.)

"(6) Deed from P. L. Buvens to W. H. Ward and wife, Hortense Ward, dated February 17, 1920, conveying said 372.6 acres.

"(7) Deed from W. H. Ward to Hortense Ward dated April 14, 1920, conveying said land and other property.

"We find that the evidence of plaintiff (Brown) was sufficient to show actual possession of said tract of land and the adjoining lands conveyed by the same deeds to plaintiff, G. L. Scott, and those holding under Scott's deed, covering the period from the date of the deed to G. L. Scott, 1892, down to 1918.

"Plaintiff (Brown) introduced evidence showing payment of all taxes upon said land for a period of more than ten years prior to the institution of this suit. Plaintiff's original petition in the case was filed August 20, 1921.

"The only actual possession of said land by defendants (Buvens et al.) at any time was shown by the testimony of the defendant Ward, as follows:

" 'It had been occupied for a few months, I do not know how many. I put a man on it and he was a trapper and hunter and he said trapping and hunting was not as good as it was further upon the San Jacinto River and he didn't want to stay there. That house I was talking about was not gone the last time I was there, in May or June of this year (1923). I do not remember the exact date I put the house there. It was in February, 1920, we purchased it, and

it was just a few months after the purchase that I put the house there. I do not know exactly. I could refer to my checks which would show when I paid for the lumber for that house; but offhand I would say that it was some time during the summer or fall of the year we purchased it that I put the house there. I kept a man there for a while after that, but then thereafter there was no one there; outside of that neither I nor anybody who is connected with my title has had any sort of possession of the property at all before or since then.'

"The suit was tried before a jury and the case was submitted on special issues. The only issues of fact submitted to the jury were with reference to the boundaries of the Nathaniel Lynch survey. There was much testimony raising an issue of fact as to whether the land in controversy was included within the boundaries of the Lynch League. The jury found upon what we have concluded was sufficient evidence that the land was included within the Nathaniel Lynch league. No issue of fact was submitted to the jury and no request was made for the submission of any issue to the jury with reference to prior possession, presumption of a deed, or any of the statutes of limitation.

"We have reached the conclusion that the deed from Frances Hardin and husband, of date October 7, 1847, to John Rundell, was ineffectual to convey the title of Mrs. Hardin to the land in controversy to Rundell (she being at that time a married woman and the property being her separate property), because that deed was not acknowledged by Mrs. Hardin as required by law at that time. (See acknowledgment to said deed on page 3 of this certificate.)

*"Questions Certified.*

"Question No. 1:

"Are we correct in the conclusion that the deed from Mrs. Hardin and husband to Rundell did not pass Mrs. Hardin's title to Rundell, because that deed was not acknowledged by Mrs. Hardin as required by law at the date of that deed?

"Question No. 2:

"It having been established by the verdict of the jury, as we have stated, that the land involved in this suit is included in the Nathaniel Lynch grant, which verdict we have concluded must be sustained by us, can the appellants (defendants below), who are strangers to the Lynch title, as shown by the foregoing statement, question the validity of the deed from Mrs. Hardin and her husband to John Rundell,

dated October 7, 1847, which deed constitutes a necessary link in appellees' record chain of title from the sovereignty?

"As bearing upon this question, see Spivy v. March, 105 Texas, 473; Houston Oil Company of Texas v. Sudduth, 171 S. W. 556.

"Question No. 3:

"Did the plaintiff below, appellee here, by putting in evidence the deed from Mrs. Hardin and husband, dated October 7, 1847, to John Rundell, by which deed, if valid, they would deraign perfect title from the sovereignty to the land in controversy (assuming that such deed was ineffectual to pass Mrs. Hardin's title), thereby destroy or rebut the presumption of title in the plaintiff arising from his prior possession of the land in controversy? In this connection, we would further state that it is our conclusion that the plaintiff's prior possession of the land in controversy was of such character as would have authorized the trial court to presume that the plaintiff (Brown) had title under the rule of prior possession as it obtains in this state, unless the plaintiff (Brown), by putting in evidence the deed from Mrs. Hardin and husband to Rundell, took away the plaintiff's right to rely upon the rule of prior possession.

"As pertaining to this question, we call attention to the case of Houston Oil Company of Texas et al. v. McCarthy, 221 S. W. 307 (opinion by this court), and also to the opinion of the Commission of Appeals of Texas in the same case, reported in 245 S. W. p. 651, and authorities therein cited.

"Question No. 4:

"The plaintiff (Brown) in this case not having interposed any plea of title by limitation to the land in controversy, was it open to the trial court to conclude that the plaintiff had acquired title by limitation under either the five or ten years statute of limitation, assuming that the evidence was sufficient to have sustained such a plea of limitation?"

The names of parties in parentheses were inserted by us for the purpose of clarifying the statement.

This case was transferred to Section "A" of the Commission of Appeals, and an opinion prepared by Judge Bishop was approved by this Court on February 9, 1927. 290 S. W., 1086. In that opinion Judge Bishop answered the four questions as follows:

"We recommend that the questions certified be all answered in the negative, except the first. To the first we recommend the answer that the deed passed no title as against the married woman and those claiming under her, but passed title as to all others."

Upon careful consideration of the vigorous arguments of the able counsel in the case, the Court decided to grant a motion for rehearing and to review the case again itself. The issue upon which the rehearing was granted primarily was the issue involved in Question No. 2: "Can the appellants (defendants below) who are strangers to the Lynch title, as shown by the foregoing statement, question the validity of the deed from Mrs. Hardin and her husband, to John Rundell, dated October 7, 1847, which deed constitutes a necessary link in appellees' record chain of title from the sovereignty?" After another thorough review of the subject, we have again concluded that the answer to this question was correct. We recognize, however, the force of the able argument against this conclusion presented by counsel. The argument is that this Court has held in numerous cases, especially the older cases, that a deed of a married woman which was defectively acknowledged, or not acknowledged at all, was void and could not give effect to a transfer. It will be observed that the deed by Frances Hardin and her husband, Martin Hardin, to John Rundell, of date October 7, 1847, was not acknowledged at all by either of the parties, but was proven only by a witness, Charles H. Graves. The Act of 1846 provided:

"That when a husband and his wife have signed and sealed any deed or other writing purporting to be a conveyance of any estate, or interest in any land, slave or slaves, or other effects, the separate property of the wife or of the homestead of the family, or other property exempted by law from execution, if the wife appear before any judge of the Supreme or District Court, or notary public, and being privily examined by such officer apart from her husband, shall declare that she did freely and willingly sign and seal the said writing to be then shown and explained to her, and wishes not to retract it, and shall acknowledge the said deed or writing so again shown to her to be her act, thereupon such judge or notary shall certify such privy examination, acknowledgment and declaration, under his hand and seal, by a certificate annexed to said writing to the following effect or substance" * * *

Then follows the form of certificate setting out the requirements indicated above.

In support of their contention counsel quote from several cases, including Berry v. Donley, 26 Texas, 745; Cross v. Everts, 28 Texas, 524; Cole v. Bamel, 62 Texas, 111.

From Berry v. Donley:

"The court below, therefore, no doubt regarded, as we think very properly, these conveyances as of themselves ineffectual to pass to

the parties claiming under them, either a legal or equitable title to the land. To hold otherwise would be virtually to repeal the statute. * * * In Perry v. Calhoun's Lessee, 8 Humph. 556, Judge Turley, delivering the opinion of the court, says: 'A feme covert cannot convey a title to her lands except by a deed executed upon her private examination, made as the law directs; her signature to a deed without such private examination is a nullity; her deeds of all kinds are void without such examination; it is the examination which gives them validity, and not the signature, the signature being a nullity without such examination. It then necessarily follows that there is no divesture of title till such examination be had,' etc."

From Cross v. Everts, 28 Texas, 524:

"It is well settled that a compliance with the requirements of this statute is indispensable to the alienation of the wife's separate estate * * * Without such compliance, her deed, signed, attested and delivered is as though it had never been written, is mere waste paper, is not her act and deed. * * * The privy examination, acknowledgment and declaration before the officer as required by statute, is the essence and foundation of the obligation of her deed."

From Cole v. Bamel, 62 Texas, 111:

"Our statutes in their watchful care over the rights of married women have prescribed the only manner in which their separate property may be conveyed by deed, and any conveyance not executed in strict conformity with the statute is an absolute nullity."

The argument is summed up by plaintiffs in error in the following language:

"From time to time the courts have said with reference to such an instrument as is here discussed, that it 'cannot be ratified,' 'cannot be the basis of an estoppel,' 'cannot be notice,' 'cannot be offered in evidence; cannot be recorded,' 'cannot be admitted in evidence as ancient instrument or otherwise,' 'cannot be held color of title under the three years statute,' 'cannot be the basis for five years limitation,' 'cannot be validated by legislative enactment,' 'such deed is an absolute nullity,' 'such instruments are not deeds at all,' 'as though it had never been written,' 'is mere waste paper,' 'conveyed no title.' ''

We recognize the weight of these arguments and the strong terms used in the early cases as to the ineffectiveness of a married woman's deed defectively acknowledged, purporting to convey her separate property.

The proposition made by defendant in error is that if this married woman's deed, unacknowledged, be regarded as absolutely void, yet it is not open to the appellants, entire strangers to the title of the

married woman, and trespassers upon the property, to insist upon its invalidity.

Defendant in error asserts that the cases in which deeds of married women, unacknowledged or defectively acknowledged, have been held void, have in all instances been cases where the married women themselves, their heirs or privies, were parties to the suits, and that no case has been found where it has been held that one who was not in privy with the title of the married woman could avoid her attempted transfer, though it might be void as to her and her heirs and privies. This statement apparently has been acquiesced in by the able attorneys for the plaintiffs in error, and we have had our attention called to no case where this was not a fact, and in all cases, as far as we have been able to find, the married women themselves, or their privies, were parties.

Judge Bishop in his opinion, 290 S. W., 1086, states:

"Our attention has been called to no case in which it has been expressly held that such a deed should be considered void when attacked by a stranger to the title held by the married woman."

This is reiterated by Judge Streetman in his argument with a careful analysis of the long list of cases cited by the able attorneys for plaintiffs in error. It is true that this Court has always held that such deeds are wholly ineffective and totally impotent to affect the rights of married women, or their heirs and privies, and the strongest language has at times been used in so declaring. The courts in construing the law have been zealous to protect the rights of married women. We do not find any decision of the Supreme Court where the controlling question was the right of a stranger to a title to attack the validity of such a deed. However, references to it were made in a number of cases, some of them far back in the history of Texas jurisprudence; and in one case, though dicta, this Court vigorously declared no such right exists.

In Houston Oil Co. of Texas v. Suddeth, 171 S. W., 556, the Court of Civil Appeals for the First District based its judgment upon the holding that such right is not available to a stranger to the title. A similar holding was made in the case of Wilson v. Fireman's Fund Ins. Co., 274 S. W., 176, by the Court of Civil Appeals for the Fourth District. However, reference was made to the issue in the Supreme Court as being an open question in the case of Tom v. Sayers, 64 Texas, 339, wherein Judge Stayton said:

"It was not necessary to show that the deed executed by the husbands and wives was so acknowledged by the wives as to pass their separate estates, *even if a stranger to the title could avail himself*

*of such a defense,* which in this case it is unnecessary to consider. (Citing Fisk v. Miller, 13 Texas, 225.)"

In the case of Spivy v. March et al., 105 Texas, at page 478, the Court, speaking through Mr. Chief Justice Brown, declared:

"It is not necessary for us to decide in this case whether a stranger to the title should ever be permitted to interpose this defense, but we are firmly convinced by authority and sound reasoning that, under such conditions, a court should construe the language as Mrs. Hensley and her heirs have construed it by their inaction for a half century. If a stranger to the title be permitted to make such objection, courts should cast upon him the burden of establishing the invalidity.

"We have in this case by the decision of the Court of Civil Appeals a stranger setting up a defect which the vendor refused to assert. The injustice and unreasonable character of the proposition forbids that this court should approve it, unless required to do so by precedents that we dare not disregard. We do not find the decisions of our courts to be of that character."

We find no holding and no intimation on the precise point to the contrary. It is true that the Court has declared deeds of married women which were not acknowledged or defectively acknowledged to be "void," "a nullity," etc.

The Act prescribing the careful means of divesting a married woman of title to her property, and the requirements of her acknowledgment, was enacted for *her* protection and benefit. But quite another and different question arises where for 75 years she and her heirs and her privies in title have wholly acquiesced in the title so imperfectly conveyed, to say that that protection and that benefit shall be freely and fully awarded to a total stranger to the title. Certainly it cannot be said that the Married Woman's Act was passed for that purpose. Since it would be most unjust and inequitable to so apply it, we are unwilling to do it. Therefore, since it is directly before us and is decisive of the case, we do not hesitate to decide the question raised by Judge Stayton in Tom v. Sayers, 64 Texas, 339, and declared through dicta by Judge Brown in Spivy v. March et al., 105 Texas, 478.

If the statute of 1846 were up for construction on the issue or question of the purpose for which it was enacted, there would be no hesitation in construing it to be an Act for the protection and benefit of the married woman and those claiming under her. There would be little hesitation in holding that it was for her protection, and only for her protection; and there would be no reason or in-

clination to construe it to be a general or omnibus protection for the benefit of any and all who might claim its benefits, be they trespasser or stranger to her title.

This Court has consistently held the privy examination, acknowledgment, and declaration before the officer, as required by the statute, essential to the validity of a married woman's conveyance, and that a defectively acknowledged deed to her separate lands did not convey her title to the vendee, and was void. It repeated that "to hold otherwise would be practically to repeal the statute." In order to give the statute effect and to protect the married woman, such holdings were necessary and correct. But we repeat that the only purpose of the statute was to protect the married woman, and it was enacted for her benefit. · ·

Though a deed of a married woman which is not acknowledged as required by the statute be considered void as to her and her privies, we think the proposition that a stranger to such title cannot be heard to raise the issue of its invalidity is thoroughly reasonable and legally sound. Certainly it is equitable and just.

To Question No. 2 we answer "No." Since this answer will entirely control the case, it is unnecessary to answer the other questions, as they become immaterial.