(2d) 155; Smith v. State (Tex. Cr. App.) 51 S.W.(2d) 686; Escarino v. State (Tex. Cr. App.) 55 S.W.(2d) 565; Vernon's Ann. C. C. P. Tex., art. 756, note 12. The alleged new evidence is not such as would probably have changed the result.

The judgment and sentence fail to give the appellant the benefit of the Indeterminate Sentence Law, as contained in Article 775, C. C. P., as amended by Acts 1931, c. 207, § 1 (Vernon's Ann. C. C. P. art. 775). The judgment will be reformed so as to condemn appellant to confinement in the state penitentiary for a period of not less than five nor more than twenty-five years. As so reformed, the judgment is affirmed.

### On Motion for Rehearing.

LATTIMORE, Judge.

We find nothing in appellant's motion for rehearing, save that in examining the record our attention has been called to the fact that we erred in the last paragraph of our original opinion in reference to what we said regarding the indeterminate sentence passed upon appellant. He was in fact given an indeterminate sentence, but in same, and also in what we said in our opinion, we lost sight of the fact that the Fortieth Legislature, in chapter 274, Acts, Regular Session (section 1), changed the minimum penalty for murder from five to two years (Vernon's Ann. P. C. art. 1257). In the sentence given appellant, and also in same as reformed in our original opinion, the minimum was made five years. The sentence of appellant will now be reformed so as to conform to the amended statute regarding said penalty, and he will be sentenced to confinement in the penitentiary for a period of not less than two nor more than twenty-five years. As thus amended, the sentence will stand, and the motion for rehearing will be overruled.

**HARRISON OIL CO. et al. v. SHERMAN et al.**
**No. 2397.**

Court of Civil Appeals of Texas. Beaumont.
Nov. 10, 1933.

Rehearing Denied Dec. 20, 1933.

Llewellyn & Dougherty, of Liberty, John E. Green, Jr., and Williams, Lee, Hill, Sears & Kennerly, all of Houston, Phillips, Trammell, Chizum, Price & Estes, of Fort Worth, Walter C. Clemons and Harold R. Moore, both of Houston, Beeman Strong, of Beaumont, and Clayton L. Orn, of Fort Worth, for appellants.

A. J. De Lange, Hill & Harvey, and A. L. Hemphill, all of Houston, for appellees.

WALKER, Chief Justice.

This was a suit in trespass to try title with appellees, the heirs of Mrs. Margaret White Swinney and their grantees, too numerous to name, as plaintiffs, and appellants, Harrison Oil Company, J. S. Abercrombie Company, Yount-Lee Oil Company, Empire Gas & Fuel Company, H. O. Compton, Higgins Oil & Fuel Company, F. N. Bullock, N. W. Murphy, George Hamman, C. W. Wolke, J. F. Weed, J. N. Henderson and wife, Golden Henderson, C. J. Robertson, and Gulf Production Company, as defendants. Judgment was for appellees upon an instructed verdict. The appeal is upon appellants' supersedeas bond. The land in controversy is a specific tract of 130 acres out of a tract of 500 acres in the M. G. White league, in Liberty county, inherited by Mrs. Margaret White Swinney from her father, M. G. White. Mrs. Swinney died in 1874, owning the 500 acres of land and leaving surviving her three children, a son, Joseph Milton Swinney, and two daughters, Martha, who married F. F. Foscue, and Elizabeth C., who married Ed Sherman on February 15, 1863, and who died in 1909; her husband, Mr. Sherman, died in 1915. A third daughter, Sarah Ann, who married Lem Elledge, predeceased her mother, leaving surviving her one son. The evidence is conclusive that Mrs. Swinney left a will, though not shown in the record, whereby she willed to her three children who survived her, as tenants in common, the 500 acres on the M. G. White league, less a tract of 75 acres off the east end of the tract subsequently awarded to the heirs of the son of Sarah Ann Elledge, deceased. This tract of 500 acres lies in the northwest corner of the White league, running with the north line of the league about five times its width; its width, as we understand from the field notes, was 865 varas. As stated, the Elledge 75 acres was off the east end of the tract. The first claim by the three children of Mrs. Swinney, after her death, to the remaining 425 acres, was evidenced by the following deed from Elizabeth C. Sherman and her husband to Martha Foscue, recorded in 1890:

"State of Texas, Liberty County

"Know All Men by These Presents: That we, E. D. Sherman and Elizabeth C. Sherman, wife of E. D. Sherman, for and in consideration of a tract of land this day deeded to us, lying in Liberty County, on the East side of the Trinity River being the west end of a Block of land willed to Martha B. Foscue by Milton Swinney and being a part of the Yocum League and lying between Yocum Lake and the river, having given, granted, bargained, sold and conveyed and by these presents do give, grant, bargain, sell and convey to Martha B. Foscue, the following tract or parcel of land to wit: one third interest in a tract of land willed by Margaret Swinney to her three children, Joseph, Martha and Elizabeth, said land being a part of the M.

G. White League lying on the East side of the Trinity River in Liberty County, said land being the distributive share of Margaret Swinney in the M. G. White League lying on the North boundary line of the said League and extending from the river to the slough or creek near the foot of the hills, said tract containing originally five hundred acres.

"To have and to hold said tract of land unto Martha B. Foscue, her heirs and assigns, together with all and singular the rights, privileges and immunities thereunto belonging, or in any wise appertaining in fee simple forever, and we do hereby covenant and agree to forever warrant and defend the title to the said land against the lawful claims of all persons whatsoever.

"In testimony whereof, we have hereunto set our hands and affixed our scrolls for seal, this 16th day of July, A. D., 1878.

"Signed, sealed and delivered in the presence of:

"J. M. Swinney.     E. D. Sherman [Seal]
"W. H. White        E. C. Sherman [Seal]

"The State of Texas, County of Liberty

"Before me, B. F. Cameron, Clerk of the County Court in and for said County and State, on this day personally appeared J. M. Swinney, known to me to be the person whose name is signed to the above and foregoing instrument as a witness and after being by me duly sworn, deposes and says that E. D. Sherman and E. C. Sherman signed the above instrument in his presence and that they acknowledged to him that they executed the same for the purposes and consideration therein expressed and he, with W. H. White signed same as witnesses at the request of said Grantors.

"Given under my hand and seal of office, this the 15th day of May, A. D., 1890. [Seal] B. F. Cameron, Clerk County Court, Liberty County, Texas, by W. B. Swilley, Deputy."

The evidence was sufficient, as a matter of law, to support the conclusion that Mrs. Sherman and her husband appropriated the tract of land on the Yocum league, referred to in their deed to Mrs. Foscue, as the consideration for its execution, and held title thereto until their death, though no deed from Mrs. Foscue to the Shermans was offered in evidence. After the execution of the above deed, Mrs. Sherman and her husband made no claim to the land thereby conveyed to Mrs. Foscue during their lifetime. After their death, their children made no claim to their mother's interest until 1922, when they and certain of their grantees executed a series of quitclaim deeds conveying to Nonie O'Brien the following described bits of land:

"All our right, title and interest in and to that certain tract or parcel of land lying in the County of Liberty and State of Texas, described as follows, towit:

"That certain tract or parcel of land lying in the M. G. White League, Liberty County, Texas, West of the Elledge tract, known as the S. B. O'Brien seventy-five (75) acre tract, and also the tract adjoining same on the West, known as the Goggan tract, being part of Lot 1, and shown on the subdivision map off the White League as 1B3 and 1B2. Being the same land intended to be conveyed by E. D. Sherman and Elizabeth C. Sherman to Martha B. Foscue by deed dated July 16th, 1878, and recorded in Vol. L, page 470 Deed Records of Liberty County.

"To have and to hold the said premises, together with all and singular the rights, privileges and appurtenances thereto in any manner belonging unto the said Nonie O'Brien, her heirs and assigns, forever."

No other claim was made by the heirs of Mrs. Sherman until 1928, when they executed a series of powers of attorney to A. E. Bush, authorizing him to take possession of, sue for, etc., their interest in the M. G. White league. This power of attorney contained the following recitation as to the consideration upon which it was executed: "It is understood and agreed, and it is a part of the consideration moving me to make this power, that the said A. E. Bush is to pay all expenses incurred by him, in recovering said property or any part thereof deemed recoverable by him; and that I am to be held free from any expenses incurred by him in connection therewith and any liability incurred by him is to be paid by him." Under authority of these powers of attorney and upon their conditions this suit was filed and prosecuted to judgment by the appellees, as plaintiffs.

The following statement gives the history of the Swinney 500 acres, less the Elledge 75 acres, subsequent to the execution of the deed by Mrs. Sherman to her sister, Mrs. Foscue; the subdivisions will be identified by reference to a map or plat in appellants' brief [produced herewith]: Mrs. Martha Foscue, joined by her husband, by deed dated in 1888, conveyed to C. B. Garrard a tract of 122 acres off the west end of the 500-acre tract designated on appellants' plat as "Garrard 122 acres." On the 12th of April, 1890, Mrs. Foscue and her husband, by a second deed, conveyed to W. S. Partlow a tract of 163 acres off the west end of the 500 acres lying immediately east of the Garrard 122 acres. Each of these deeds purported to convey specific tracts of land. On August 23, 1890, Joseph Milton Swinney conveyed to W. S. Partlow, the grantee above named, the following described tract of land: "Do grant, sell and convey unto the said W. S. Partlow of the County of Liberty and State of Texas all of my interest as heir at law of my mother Margaret Swinney in and to that certain tract of five hundred acres of the M. G. White League, same being my mother's distributive share, and my said interest is one-third of the same, less seventy-five acres off of the east end or one hundred and forty-three & ⅔ acres lying and being situated in Liberty County, State of Texas, on the east side of Trinity River." These three deeds contained the usual habendum and warranty clauses. On October 16, 1891, W. S. Partlow conveyed to Thos. Goggan a tract of 100 acres out of the 500-acre tract, and on January 1, 1895, to J. W. Pipkin a tract of 75 acres out of the 500-acre tract. The Pipkin tract lies immediately west of the Elledge 75 acres, designated on appellants' map as "Pipkin 75 acres." The Goggan 100-acre tract lies immediately west of the Pipkin tract, designated on appellants' map as the "Goggan 100 acres." On June 25, 1899, W. S. Partlow conveyed to Sim De Blanc a tract of 130 acres out of the 500 acres, lying between the Garrard tract on the west and the Goggan tract on the east. These four deeds divided the 425 acres into four specific tracts, and included all of the 425 acres in their boundaries. The Sim De Blanc 130 acres is designated on appellants' map as the "Ogden 130 acres" and is the land

Sketch A.

SUBDIVISION N° ONE (1) M. G WHITE LEAGUE

in controversy in this suit. It thus appears that Mrs. Foscue and her brother, Joseph Milton Swinney, and their grantees, treated as valid the deed from Mrs. Sherman to Mrs. Foscue and appropriated and claimed the entire 425 acres, to the exclusion of any claim by Mrs. Sherman and her heirs, and by their affirmative claim and by their deeds conveyed specific tracts and partitioned among themselves the entire 425 acres. Appellants' chain of title under the grantees of W. S. Partlow to the land in controversy consists of more than seventy-five different deeds.

We agree with the contention of appellees that the failure of Mrs. Sherman to acknowledge the deed executed by her and her husband to Mrs. Foscue rendered it absolutely void and that this defect in the deed was available to them, claiming as heirs of Mrs. Sherman. Buvens v. Brown, 118 Tex. 551, 18 S.W.(2d) 1057. We also agree with their further contention that Mrs. Sherman, by retaining and appropriating the consideration received from her sister for the execution of this deed, did not ratify its defect and that her act in retaining the consideration did not estop her and her children from asserting its invalidity. Daniel v. Mason, 90 Tex. 240, 38 S. W. 161, 59 Am. St. Rep. 815; Owen v. Land Company, 11 Tex. Civ. App. 284, 32 S. W. 189, 1057; Huss v. Wells, 17 Tex. Civ. App. 195, 44 S. W. 33; Hannay v. Harmon (Tex. Civ. App.) 137 S. W. 406; Spear, Law of Marital Rights in Texas (3rd Ed.) p. 347. On these conclusions appellees, as the heirs of Mrs. Sherman, inherited her interest in the 425 acres as tenants in common with the remote grantees of Mrs. Foscue and Joseph Milton Swinney.

It is also the law that the conveyances by appellees' cotenants of specific portions of the common property were not absolutely void as to appellees, but merely voidable at their election and only to the extent that they were prejudiced thereby. Heller v. Heller, 114 Tex. 401, 269 S. W. 771; Maverick v. Burney, 88 Tex. 560, 32 S. W. 512; Zinn v. Farmer (Tex. Civ. App.) 243 S. W. 523; Roseborough v. Cook, 108 Tex. 364, 194 S. W. 131; Cook v. Railway, 3 Tex. Civ. App. 125, 22 S. W. 1012; March v. Huyter, 50 Tex. 243; McKey's Heirs v. Welch's Ex'x, 22 Tex. 390; Medina Oil Development Company v. Murphy (Tex. Civ. App.) 233 S. W. 333; McAllen v. Raphael, 11 Tex. Civ. App. 116, 32 S. W. 449. Under this proposition appellees had the right to recognize the conveyances made by their cotenants and to claim their interest in the land against such conveyances in the inverse order of their execution; that is, to recognize the first conveyances made by their cotenants and to claim only against the last conveyances. This proposition would have invested appellees with title to the 130 acres in controversy, and it was on this theory of the facts, as we understand the record, that

they base their claim and were awarded this specific tract of land by the judgment of the lower court.

Under the general principles of law governing cotenancy, appellees were not forced absolutely to recognize the conveyances of the common property executed by their cotenants, but had the right to contest such conveyances to the extent necessary to protect fully their rights. Mast v. Tibbles, 60 Tex. 301; Good v. Coombs, 28 Tex. 34; Dorn v. Dunham, 24 Tex. 366; Duncan v. Sylvester, 24 Me. 482, 41 Am. Dec. 400. However, they were compelled to make an election, either to treat these conveyances as good or else to avoid them. Barnes v. Lynch, 151 Mass. 510, 24 N. E. 783, 21 Am. St. Rep. 470. By executing their quitclaim deeds to Mrs. Nonie O'Brien, appellees made their election to repudiate the ex parte partition made by their cotenants and to claim for themselves, notwithstanding such ex parte partition, specific tracts or portions of the common property. Having thus selected specific portions of the common property as their own, thereby attempting to make an ex parte partition, their conveyances to Mrs. Nonie O'Brien of these specific portions of property were good as against the world, Lasater v. Ramirez (Tex. Com. App.) 212 S. W. 935, except in so far as appellees' cotenants had the right to attack them as being inequitable and prejudicial to their interests, which they have not attempted to do in this suit. Certainly appellees cannot now be heard to question their deliberate and voluntary act in attempting to make, upon a valuable consideration, an equitable ex parte partition by executing their quitclaim deeds to specific tracts of land to Mrs. Nonie O'Brien, nor can they be heard to deny that their deeds to Mrs. Nonie O'Brien conveyed to her the undivided interest in the 500 acres inherited by Mrs. Sherman from her mother.

That at the time she accepted her quitclaim deeds from appellees Mrs. Nonie O'Brien held the land covered by these quitclaim deeds under appellees' cotenants is immaterial to any issue in this case. Appellees owned the interest of Mrs. Sherman, which they held as a joint tenancy and had the right to sell. Not being satisfied with her title under appellees' cotenants, it was the right of Mrs. O'Brien, which she exercised, to ask appellees to claim specific portions of the land as their aliquot part of the common property and to convey the same to her.

There is no merit in the contention of appellees that the Nonie O'Brien deeds conveyed only their undivided interest in the specific tracts referred to therein. The language of these deeds affirmatively excludes that construction. The particular reference "being the same land intended to be conveyed by E. D. Sherman and Elizabeth C. Sherman to Martha B. Foscue by deed dated

July 16th, 1878, and recorded in Vol. L, page 470 Deed Records of Liberty County," does not refer directly to the two specific tracts described in the quitclaim deeds, but to the general description "all our right, title and interest," etc. This construction follows because the Sherman-Foscue deed* was not the conveyance of a specific tract, but of the undivided one-third Sherman interest in the 500 acres, and as this language cannot be disregarded, it can have reference only to "all our right, title and interest," etc. The manifest intention of the grantors was to convey their interest in the two specific tracts, which interest they identified and described as being all the interest held by them under Mrs. Sherman. By conveying these two specific tracts, it follows that the grantors conveyed all the interest owned by them under Mrs. Sherman, and, having thus identified and conveyed their interest, they cannot now attack their deeds thus voluntarily made upon a valuable consideration. That these deeds were only quitclaim deeds can afford appellees no basis for relief. A quitclaim deed conveys the present title of the grantor as effectually as would a warranty deed.

Appellants have other propositions, including that of ratification by appellees of the void deed of Mrs. Sherman, which we pretermit as being immaterial to a disposition of this appeal.

It follows, for the reasons stated, that the judgment of the lower court should be reversed and judgment here rendered for appellants for all the land in controversy between appellants and appellees.

Reversed and rendered.